**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

STEVEN GOODMAN, et. al.        :
                               :
            Plaintiffs,        :        **Hon. Joseph H. Rodriguez**
                               :
       v.                      :        Civil Action No. 11-4395 (JHR)
                               :
BURLINGTON COAT FACTORY, et. al., :
                               :        **O P I N I O N**
            Respondents.       :
_____:

**RODRIGUEZ**, Senior District Judge:

This matter is before the Court on Plaintiffs' Motion for Conditional Certification of a Collective Action under Section 16(b) of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 et seq. based on allegations that Defendants misclassified the named Plaintiff, Steven Goodman, and other assistant store managers as "exempt" under the FLSA and failed to pay them overtime for hours worked in excess of 40 hours per week. Mr. Goodman and the opt-in Plaintiffs ("Plaintiffs") ask the Court to certify a collective action consisting of current and former operations managers, customer service logistics managers, and merchandise managers employed by Burlington Coat Factory Warehouse Corp., Burlington Coat Factory Investment Holdings, Inc., and Burlington Coat Factory Holdings, Inc. ("Burlington"), at any time from July 28, 2008 to the entry of judgment in this case. Plaintiffs also ask the Court to facilitate notice of the lawsuit by ordering Defendants to produce to Plaintiffs' counsel an electronic list of all potential opt-in collective action members.

The Court has considered the written submissions of the parties, as well as the

arguments advanced during oral argument on November 15, 2012. For the reasons expressed below, the Court will grant Plaintiffs' Motion for Conditional Certification, order that Defendants produce to Plaintiffs the contact information of potential opt-in plaintiffs, and order that the parties meet and confer about the form and timing of notice to be issued.

## I.  Factual and Procedural History

Burlington is a nationwide retail department store chain that sells merchandise through 465 brick-and-mortar stores in 44 States across the United States. (Ansara Dep. Tr. 13) The named Plaintiff, Steven Goodman, worked as an operations manager at Burlington from approximately August 2005 until August 2009. (Goodman Dep. Tr. 9-11; 182:9) Mr. Goodman alleges that Burlington misclassified him and other assistant store managers (ASMs)[1] as exempt under the FLSA and failed to pay them for all hours worked as well as overtime for hours worked above 40 in a workweek, in violation of the FLSA. (Am. Compl. ¶ 1).

Plaintiffs allege that Burlington's classification of the ASM position as "exempt" under the FLSA was wrongful, as ASMs perform non-managerial work "that requires little skill and no capital investment and their duties and responsibilities do not principally include any managerial responsibilities or the exercise of independent

---

[1] The collective action encompasses all "assistant store managers," which includes the two current positions known as "customer services logistics manager" and "merchandise manager." A fully-staffed management team at a Burlington store consists of one store manager, one customer service logistics manager, and two merchandise managers. (Ansara Dep. Tr. 74) Burlington created the "customer services logistics manager" position in May 2011, which combined two separate positions formerly called "operations manager" and "customer services manager." According to the Plaintiffs' Amended Complaint, there are at least 250 potential members of the collective action class. (Am. Compl. ¶ 17).

2

judgment" and ASMs "do not have the authority to hire or fire other employees, and they are not responsible for making hiring and firing recommendations."[2] (Am. Compl. ¶ 29). Additionally, Plaintiffs claim that they spent the majority of their time performing work typically assigned to employees, such as working on the sales floor, opening boxes, ticketing merchandise, stocking shelves, cashiering, unloading trucks, and cleaning the bathrooms.[3] Plaintiffs claim that while employed as ASMs, they were

---

[2] Named Plaintiff Steven Goodman testified that he worked within the "guidelines" set by Burlington and could not independently make hiring decisions for the store, create a budget, order from outside vendors, make store repairs, approve overtime, fire employees, or select days for truck deliveries. (Goodman Dep. Tr. 115:14-14, 133:5-135:4; 213-215; 292:19-293:14; 291:1-5 ) Mr. Goodman testified that "corporate" selects the products for the store, sets prices, and selects product locations. (Goodman Dep. Tr. 290:6-291:7) Opt-in Plaintiff Donna Wilson testified that she was not responsible for developing strategies to increase revenue and cut costs, approving overtime, hiring or terminating employees, setting pay rates, setting the store hours of operation, determining product placement, determining product pricing and markdowns, hiring outside vendors, or setting the store temperature, as "corporate," the "store manager" or the "district manager" had authority over these tasks. (Wilson Dep. Tr. 172:6 - 176:23) Opt-in Plaintiff Edwin Murillo testified that while he worked as an ASM, Burlington "corporate" selected the products to be sold in the store, set the prices and markdowns of the products, decided where to display the products, developed strategies to cut costs and increase revenue, set the labor budget, decided the music to be played in the store, decided the temperature of the store, and that a "store manager" or "district manager" authorized associate overtime, hired and fired employees, set sales associates' pay rates, and store hours of operation. (Murillo Dep. Tr. 166:23-174:4) Additionally, opt-in Plaintiff Wanda West's declaration indicates that ASMs where she worked "had very little decision-making responsibility" and neither she nor opt-in Plaintiff Sharron Layne were responsible for decisions such as hiring or firing, setting store hours, setting product prices, setting the dress code, and could not independently discipline an employee. (West Dec. ¶¶15-22; Layne Dec. ¶¶ 16-19).

[3] Named Plaintiff Steven Goodman testified that "the company wanted 80 to 90 percent of the time to be doing floor work, not supervising." (Goodman Dep. Tr. 151:19-21) He also testified that "[w]e were told by corporate that if we were in the office more than 10 to 20 percent of the time, that we weren't doing our job." (Goodman Dep. Tr. 99:15-17) Mr. Goodman testified that he spent 80 to 90 percent of his day performing "hourly tasks" such as "receiving, opening up boxes, putting them on the floor, making sure they're priced, cleaning up the back, bringing the truck in, cashiering, sweeping, cleaning the bathrooms, cleaning the break room, [and] putting merchandise on the floor." (Goodman Dep. Tr. 234: 5-9, 15) Opt-in Plaintiff Donna Wilson testified that she spent 90 percent of her time performing tasks such as unpacking boxes, filling the racks on the sales floor, operating the register. (Wilson Dep. Tr. 69:16-22) Wilson testified that when she worked as a merchandising manager, "[m]y job description was to assist the store manager, hiring, recruiting the employee, training, coaching, analyzing the business. What I

3

required to work more than 40 hours in a workweek and did not receive overtime compensation.[4]

Through the testimony of its Rule 30(b)(6) corporate representative, Burlington has indicated that all ASMs are subject to the same policies and procedures.  Burlington creates an employee handbook, system of core values, code of business conduct and ethics, and workplace rules and policies that apply to all Burlington employees regardless of the store's size, location, or geographic region in which they work.  (Pls. Mot. Exs. A, L-R; Ansara Dep. Tr. 36-37, 42-47, 50-55)  The same job descriptions apply to all ASM positions across the United States, regardless of the store's location, size, or hours of operation and only one job description is in effect at any given time. (Ansara Dep. Tr. 82-83, 89, 91 93)  ASMs are subject to the same training requirements, as

---

did was open boxes, ticket merchandise, clean restrooms, unload truck, cashiering, stock the shelf and stock the racks on the floor." (Wilson Dep. Tr. 51:23-52:3)  Opt-in Plaintiff Edwin Murillo testified that he was required to spend 90 percent of his time on the sales floor and performing "hourly tasks," which involved "get[ting] merchandise from receiving," "plac[ing] the merchandise in the respective places," "mov[ing] the garbage that was produced by the department from the floor with a pallet jack, throw[ing] away the cardboard to the containers outside the store," cleaning the bathroom, cashiering, and repairing fixtures.  (Murillo Dep. Tr. 155-59)  Additionally, the two opt-in Plaintiffs' declarations indicate that the majority of their time was spent performing tasks such as re-stocking racks, cashiering, unloading products from delivery trucks, and cleaning.  (Layne Dec. ¶ 12; West Dec. ¶ 12).

[4] Named Plaintiff Steven Goodman testified that he worked over 55 hours per week throughout his employment as an ASM and worked on average between 65 and 75 hours per week. (Goodman Dep. Tr. 14:1-4; 296:13)  Opt-in Plaintiff Donna Wilson testified that she worked an average of 59-69 hours per week (Wilson Dep. Tr. 177:1-178:14)  Opt-in Plaintiff Edwin Murillo testified that he worked "between 50, 58 hours, maybe more" per week.  (Murillo Dep. Tr. 173:4).  Additionally, the two opt-in Plaintiffs' declarations indicate that they worked over 40 hours per week and did not receive overtime compensation.  (Layne Dec ¶¶ 7, 8 (worked "on average, between 50-55 hours per week" and "was paid a set salary each week and did not receive overtime when I worked more than 40 hours in any workweek"); West Dec. ¶¶ 7, 8 ("I typically worked between 48-50 hours per week" and "I was paid a salary and was not paid any overtime if I worked more than 40 hours in a workweek.")).

Burlington requires all new ASMs to attend a classroom-style training program, which is uniform throughout the country and taught by a Burlington Regional Human Resource Director. (Ansara Dep. Tr. 29-30) Burlington also requires ASMs to complete computer-based e-learning modules and remain up to date through Burlington's internal intranet messaging system "portal.coat.net," the content of which is the same for all ASMs across the country. (Ansara Dep. Tr. 69-71; Pls. Mot. Ex. J (E-learning modules))

Further, Burlington compensates all ASMs in the same manner and classifies all ASMs as exempt. Burlington's Salary Guidelines Brochure and Mr. Ansara's testimony both indicate that all ASMs are paid a fixed annual salary and they do not receive overtime compensation. (Pls. Mot. Ex. K (Burlington Salary Guidelines Brochure) at BCF 109-110; Ansara Dep. Tr. 99) Burlington classifies all ASMs as exempt from the overtime requirements of the FLSA, regardless of the individual ASM's tenure, the ASM's supervisor or manager, or the store's location, size, sales volume, hours of operation. (Ansara Dep. Tr. 99-102).

The named Plaintiff, Steven Goodman, believes that he and other ASMs are entitled to overtime compensation, as he believes that they performed non-managerial duties typically performed by a non-exempt employee and worked in excess of forty hours per week; accordingly, Mr. Goodman filed his Complaint against Burlington on July 29, 2011. On April 30, 2012, Mr. Goodman filed the present Motion for Conditional Certification on behalf of a proposed collective action comprised of himself and "all current and former operations managers, customer service logistics managers, merchandise managers and similarly situated current and former employees holding

5

comparable positions with different titles, employed by Defendants in the United States, at any time since July 28, 2008 to the entry of judgment in this case." (Pls. Mot. 2) Since Mr. Goodman filed his Complaint, four potential plaintiffs have filed Notices of Consent to join the collective action.

## II.  Standard

In 1938, Congress enacted the Fair Labor Standards Act "to aid the unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage." Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707 n.18 (1945).  Section 216(b) of the FLSA provides a "collective action" mechanism that allows an employee alleging an FLSA violation to bring an action on behalf of himself "and other employees similarly situated." 29 U.S.C. § 216(b).  Unlike class actions under Rule 23,[5] the FLSA "collective action" requires plaintiffs who desire to be included to affirmatively "opt in" to the litigation by filing a written consent with the court.[6]

The United States Court of Appeals for the Third Circuit typically uses a two-tiered analysis when deciding whether a suit under § 216(b) may move forward as a collective action.[7]  During the first "conditional certification" phase, the Court

---

[5] Rule 23 establishes three types of class actions.  Class actions under Rules 23(b)(1) and 23(b)(2) require participation from individuals who fall within the definition of the class.  Fed. R. Civ. P. 23(b)(1); Fed. R. Civ. P. 23(b)(2).  Under Rule 23(b)(3), a plaintiff must "opt out" if he or she does not wish to be bound by the judgment.  Fed. R. Civ. P. 23(b)(3).

[6] "No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C.A. § 216(b).

[7] The United States Court of Appeals for the Third Circuit recently affirmed the use of this two-tiered approach, noting that this approach, "while nowhere mandated, appears to have garnered wide acceptance." Zavala v. Wal-Mart Stores, Inc., 691 F.3d 527, 536 (3d Cir. 2012) (internal

determines whether "the employees enumerated in the complaint can be provisionally categorized as similarly situated to the named plaintiff." Symczyk v. Genesis HealthCare Corp., 656 F.3d 189, 192 (3d Cir. 2011) cert. granted on other grounds, 11-1059, 2012 WL 609478 (U.S. June 25, 2012).[8]  If the plaintiff meets his or her burden at this initial phase, the court will "conditionally certify" the collective action "for the purposes of notice and pretrial discovery." Id.  Following the notice and discovery period, the defendant typically moves the Court to "decertify" the collective action on the ground that the opt-in plaintiffs are not similarly situated. See Zavala v. Wal-Mart Stores, Inc., 691 F.3d 527 (3d Cir. 2012).  During this "final certification" phase, which occurs with "the benefit of a much thicker record than it had at the [conditional certification] stage, a court . . . then makes a conclusive determination as to whether each plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiff." Symczyk, 656 F.3d at 193.  Following final certification, the collective action proceeds to trial as a collective action.

      The two phases of § 216(b) collective action certification require different inquiries and thus call for two different burdens of proof.  During the initial "conditional certification" phase, the court employs a lenient "modest factual showing" standard,

---

citation omitted).

[8] In Symczyk v. Genesis HealthCare Corp., the Third Circuit noted that "the 'certification' we refer to here is only the district court's exercise of its discretionary power, upheld in Hoffman-La Roche, [493 U.S. 165 (1989)], to facilitate the sending of notice to potential class members, and is neither necessary nor sufficient for the existence of a representative action under FLSA." 656 F.3d 189, 194 (3d Cir. 2011) (quoting Myers v. Hertz Corp., 624 F.3d 537, 555 n.10 (2d Cir. 2010) (internal quotation marks omitted)).

under which "a plaintiff must produce some evidence, beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees."[9] Symczyk, 856 F.3d at 193. See also, e.g. Ruffin v. Avis Budget Car Rental, LLC, et. al., no. 11-01069, at *3 (D.N.J. June 28, 2012) (noting that "[i]t is generally established that the standard applied at this first stage is fairly lenient"). In contrast, the final certification phase is less lenient and requires the plaintiff to prove by a preponderance of the evidence that members of a proposed collective action are similarly situated. Zavala, 691 F.3d at 537. Accordingly, the first "conditional certification" stage involves "determining whether similarly situated plaintiffs do in fact exist, while at the second stage, the District Court determines 'whether the plaintiffs who have opted in are in fact similarly situated to the named plaintiffs.'" Id. at 536, n.4 (quoting Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010)).

### III.  Summary of the Parties' Arguments

Mr. Goodman argues that he has produced the "modest" evidence required to show a factual nexus between the manner in which Burlington's alleged policy of misclassifying ASMs as "exempt" under the FLSA affected him and the manner in which it affected other Burlington ASMs. Specifically, Mr. Goodman's evidence includes: the ASM job descriptions; several Burlington policies and procedures, which apply

---

[9] In establishing that the "modest factual showing" standard applies to the conditional certification phase, the Third Circuit noted, "[w]e believe the modest factual showing standard – which works in harmony with the opt-in requirement to cabin the potentially massive size of collective action – best comports with congressional intent and with the Supreme Court's directive that a court ascertain the contours of a collective action at the outset." Symczyk, 656 F.3d at 193 (internal citation omitted).

uniformly to all ASMs across the country; Burlington's Rule 30(b)(6) Deponent's testimony; Mr. Goodman and two opt-ins' deposition testimony,[10] and a former District Manager's testimony.[11]  Mr. Goodman argues that this evidence shows that Burlington ASMs were "subject to a uniform corporate policy of being improperly classified and treated as exempt." (Pls. Mot. 15-16).  Additionally, Mr. Goodman argues that the Court should conditionally certify the collective action because: (1) prompt notice to potential

---

[10] Mr. Goodman argues that although his and the opt-ins' deposition testimony confirming that the ASMs' duties are the same "is ultimately a merits point beyond the scope of the present motion," he argues that the testimony "is not insignificant" in that it "confirms that they spent the majority of their time doing the work of hourly employees" such as working on the sales floor, opening boxes, ticketing merchandise, stocking shelves, cashiering, unloading trucks, and cleaning the bathrooms.  (Pls. Mot. 4-5).

[11] Mr. Goodman provided the following Exhibits to support his Motion for Conditional Certification:

>    Exhibit A: Deposition Testimony of Burlington's Rule 30(b)(6) Deponent Louis Ansara;
>    Exhibits B, C, D, E, F: Job Descriptions for the current and former ASM positions (Operations Manager, Operations Assist Store Manager, Customer Service / Logistics Manager, former Merchandise Assistant Store Manager, and the current Merchandise Assistant Store Manager position);
>    Exhibit G: Deposition Testimony of opt-in Plaintiff Edwin Murillo;
>    Exhibit H: Deposition Testimony of opt-in Plaintiff Donna Wilson;
>    Exhibit I: Deposition Testimony of named Plaintiff Steven Goodman;
>    Exhibit J: E-Learning Modules;
>    Exhibit K: Burlington Salary Guidelines Brochure;
>    Exhibit L: Burlington Coat Factory Employee Policy Handbook;
>    Exhibit M: Burlington, The Heart of Success Core Values;
>    Exhibit N: Burlington Coat Factory Warehouse Corporation Code of Business Conduct and Ethics;
>    Exhibit O: Burlington Coat Factory, Standard Operating Procedure;
>    Exhibit P: Burlington Coat Factory Store Guidelines;
>    Exhibit Q: Burlington Coat Factory General Merchandising Guidelines;
>    Exhibit R: Burlington Coat Factory Manager's Loss Prevention Guide, and
>    Exhibit S: Testimony of former District Manager Claudia Gonzalez, who worked as an ASM from 1993-99.

Also, by way of informal letter dated October 19, 2012, Mr. Goodman submitted declarations of from the two most recent opt-in plaintiffs, Wanda West and Sharron Layne.  (Dkt. No. 110).

plaintiffs is consistent with the policy concerns articulated in <u>Hoffman v. La Roche</u>,[12] 493 U.S. 165, (1989), and also furthers the legislative purpose of Section 216 of the FLSA; (2) potential opt-in plaintiffs will be prejudiced by any delay because the statute of limitations for potential opt-in plaintiffs' FLSA claims is not tolled by the filing of the Complaint; (3) conditional certification will ensure judicial efficiency by eliminating the need for numerous individual lawsuits throughout the country; (4) and collective action litigation is the most appropriate vehicle to address the legality of company-wide classification decisions such as Burlington's classification of ASMs as "exempt" under the FLSA.

Burlington argues that the Court should deny conditional certification of the collective action because Mr. Goodman has failed to establish that he is "similarly situated" to other ASMs across the country. (Def. Br. Opp'n.) Specifically, Burlington argues that the Court should deny Plaintiffs' Motion because: (1) the actual duties performed by ASMs nationwide vary extensively and Mr. Goodman and the opt-ins' experiences differed from other ASMs; (2) the ASMs are not similarly situated based solely on the classification of the employees as "exempt" under the FLSA; (3) Mr. Goodman has failed to show that he and other ASMs are similarly situated with regard to an unlawful policy; (4) Burlington's corporate policies and procedures are lawful, premised on the expectation that ASMs perform management duties, and do not show that ASMs nationwide are required to perform non-exempt work; (5) even if the

---

[12] The <u>Hoffman</u> Court held that District Courts have discretion when implementing collective age discrimination actions under Section 216(b), incorporated in the Age Discrimination in Employment Act by 29 U.S.C. § 626(b), by facilitating notice to potential plaintiffs, noting that a trial court "can better manage a major ADEA action if it ascertains the contours of the action and the outset" and "[b]y monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative." 493 U.S. 165, 170-72 (1989).

corporate policies evidence similarity between the ASMs, to show that the plaintiffs are "similarly situated" for purposes of conditional certification, Mr. Goodman would need to provide sufficient evidence that ASMs deviate from the requirements and policies to the same extent as Mr. Goodman; (6) Mr. Goodman has failed to show that ASMs outside of two stores in a district in Florida were similarly affected by an allegedly unlawful policy; and (7) Mr. Goodman has failed to show that other ASMs want to opt into the collective action.  Burlington also argues that the Court should disregard the declarations of the two most recent opt-ins, submitted by Mr. Goodman by way of informal letter dated October 19, 2012.  Finally, Burlington argues that if the Court grants Plaintiffs' Motion, the Court should limit the form and timing of notice.

In response, Mr. Goodman asserts that he has met his "lenient" burden of showing that the ASMs are similarly situated for the purposes of conditional certification.  Specifically, Mr. Goodman asserts that Burlington's arguments are inappropriate because:  (1) at this initial conditional certification stage, questions concerning the ASMs' actual duties require the Court to address the merits of the plaintiffs' FLSA claim; (2) Plaintiffs' burden at this conditional certification stage requires only a showing of a uniform business practice; (3) Burlington misstates Plaintiffs' burden by asserting that Plaintiffs must show evidence that all ASMs deviate from the corporate policies, whereas the ultimate question at trial only addresses the similarity of the individuals who opt into the collective action; (4) Burlington inappropriately relies on second-stage case law and cases outside of the Third Circuit; (5) District Courts have conditionally certified a collective action based on similar

11

evidence of uniform corporate policies;[13] and (6) the Third Circuit does not require Mr. Goodman to show that similarly situated individuals desire to opt-in and even if the Third Circuit required such a showing, Mr. Goodman has met his burden based on the two individuals who had opted in by the time of Mr. Goodman's filing of the present Motion.  Further, Mr. Goodman argues that the Court should consider the declarations of the two most recent opt-ins, as these individuals acted within their rights to opt into the lawsuit.

Further, Mr. Goodman challenges Burlington's submission of 38 "happy camper" declarations from ASMs around the country to illustrate that the ASMs' actual duties vary extensively.  Mr. Goodman argues that the Court should disregard these declarations because:  (1) at this stage, the focus should be on plaintiffs' evidence as to whether plaintiffs have met their "modest factual showing"; (2) statements gathered by an employer from current employees are inherently coercive; (3) Burlington improperly submitted the "happy camper" declarations to argue the merits of the FLSA action, and (4) the declarations are irrelevant because they were submitted on behalf of individuals who would not likely opt into the collective action.

---

[13]  See, e.g., Zaniewski v. PRRC, Inc., 848 F. Supp. 2d, 228 (D. Conn. 2012) (noting that employers' nationwide use of uniform ASM job descriptions, policies and procedures "make good business sense" and"[t]he Court is not critical of them. However, when such practices respecting a particular group of employees are coupled with the employer's uniform classification of all members of that group as 'exempt,' the conclusion is compelled that the employees are 'similarly situated' for purposes of an FLSA action challenging the validity of the exemption");  Ravenell v. Avis Budget Car Rental LLC, 2010 WL 2921508, at *4 (E.D.N.Y. July 19, 2010) (noting that plaintiffs' conditional certification argument was "buttressed by Avis's own corporate documents, which reveal that all Avis shift managers, wherever located, were treated as part of a category of similarly situated employees. It is undisputed that the job advertisement, job description, and training materials for the shift manager position applied to all Avis shift managers.  These documents support Plaintiffs' position that they were subjected to an allegedly unlawful nationwide corporate policy.").

## IV.  Conditional Certification Analysis

The Court finds that Mr. Goodman has made a "modest factual showing" of a factual nexus between the manner in which Burlington's alleged policy affected him and the manner in which it affected other Burlington ASMs.  Specifically, Mr. Goodman's evidence includes: the ASM job descriptions, which apply to all ASMs nationwide; several Burlington corporate policies and procedures, which include a uniform method of compensation and apply to all ASMs nationwide; Burlington's Rule 30(b)(6) deponent's testimony confirming the uniformity of Burlington's corporate structure; a former District Manager's testimony, and Mr. Goodman and two opt-ins' deposition testimony, which indicate that the Plaintiffs spent a majority of their time performing non-exempt tasks, worked more than forty hours in a workweek, and that Plaintiffs did not receive overtime compensation.  Mr. Goodman has also submitted declarations from two opt-in Plaintiffs from Burlington stores in Kansas and Ohio; their statements allege that they spent a majority of their time performing non-exempt tasks, worked more than forty hours in a workweek, and did not receive overtime compensation.

At this stage, the Court's role is not to evaluate the merits of Plaintiffs' claim that Burlington misclassifies ASMs as "exempt"; rather, the Court's role is to determine whether Mr. Goodman has made a modest factual showing of the manner in which this allegedly unlawful policy affected him and the way it affected other Burlington ASMs. Here, the Court notes that all Burlington ASMs nationwide are subject to the same uniform job descriptions, training procedures, work regulations, and compensation policies, including a uniform classification of all ASMs nationwide as "exempt" under the FLSA.  Mr. Goodman's testimony and the testimony of the ASM opt-ins indicate that

they performed the work of non-exempt hourly employees and worked over forty hours in a workweek without receiving overtime compensation.  Here, without weighing the merits of Plaintiffs' FLSA claims, the Court finds that Mr. Goodman has made a "modest factual showing" that to the extent that Burlington's allegedly unlawful misclassification affected Mr. Goodman, it affected other potential ASM collective action members.[14]  At this stage, it is sufficient that Mr. Goodman has produced enough evidence for the Court to determine that "similarly situated plaintiffs do in fact exist." See Zavala, 691 F.3d at 536, n.4 (quoting Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010)).  Following the issuance of notice in this case, at the second stage, the Court will address "whether the plaintiffs who have opted in are in fact similarly situated to the named plaintiffs." Id.

Accordingly, at this stage, the Court declines to consider the 38 declarations that Burlington submits to show individual differences among the ASMs' actual duties.  The Court finds that this inquiry necessarily addresses the merits of Plaintiffs' claim and is therefore premature.[15]  Similarly, Burlington's arguments regarding the individual ASMs' workplace behavior and poor performance records are premature; at this stage, the Court must refrain from addressing the merits of Plaintiffs' claim and making

---

[14] Accord, e.g. Stillman v. Staples, Inc., No. 07-849, 2008 WL 1843998, at *4  (D. N.J. April 22, 2008) (noting that "at this stage the Court here does not engage in an analysis as to whether or not the Sales managers are exempt, but rather concentrates on whether or not the plaintiff has satisfied the lenient burden of showing that the other Sales Managers are similarly situated to him").

[15] Accord, e.g. Pereira v. Foot Locker, Inc., 261 F.R.D. 60, 67 (E.D. Pa. 2009) ("[W]hile such evidence is reviewed in assessing Plaintiff's burden to establish that he is similarly situated, such evidence is more appropriately substantively weighed pursuant to a decertification motion or a motion for summary judgment.  Many of Defendant's arguments and the evidence it has supplied invite this Court to wade into credibility and merit determinations of Plaintiff's claims, analyses improper for this stage in the proceedings.  Plaintiffs need only provide some modest evidence beyond pure speculation that Defendant's alleged policy affected other employees.").

credibility determinations.  Rather, at the second stage of collective action certification, the Court will consider the individual differences among the ASMs who actually opt in, as the Plaintiff must prove by a preponderance of the evidence that the actual members of the proposed collective action are similarly situated.  <u>Zavala</u>, 691 F.3d at 537.

## V.  Conclusion

For the reasons stated above, the Court finds that Plaintiffs have made a "modest factual showing" that their proposed collective action is similarly situated.  Therefore, Plaintiffs' Motion for Conditional Certification is granted.  The appropriate order shall issue.

Dated: November 20, 2012

/s/ Joseph H. Rodriguez

Hon. Joseph H. Rodriguez

UNITED STATES DISTRICT JUDGE