UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

-------------------------------------------------------X
STEVEN GOODMAN, Individually and          :
on Behalf of All Other Persons Similarly      :          Civil Action No.: 1:11-cv-04395-JHR-JS
Situated,                                                    :
                                                              :
                    Plaintiff,                            :
                                                              :
              -against-                                 :
                                                              :
BURLINGTON COAT FACTORY                  :
WAREHOUSE CORPORATION,               :
BURLINGTON COAT FACTORY                  :
INVESTMENT HOLDINGS, INC., and        :
BURLINGTON COAT FACTORY                  :
HOLDINGS, INC.,                                   :
                                                              :
                    Defendants.                        :
-------------------------------------------------------X
BARBARA KAWA, THERESA MASSEY   :
and DANIELLE SOLECKI, Individually      :
and on Behalf of All Other Persons          :          Civil Action No.: 1:14-cv-2787-JHR-JS
Similarly Situated,                                   :
                                                              :
                    Plaintiffs,                          :
                                                              :
              -against-                                 :
                                                              :
BURLINGTON STORES, INC.,                   :
BURLINGTON COAT FACTORY                  :
WAREHOUSE CORPORATION,               :
BURLINGTON COAT FACTORY                  :
INVESTMENT HOLDINGS, INC., and        :
BURLINGTON COAT FACTORY                  :
HOLDINGS, LLC f/k/a BURLINGTON        :
COAT FACTORY HOLDINGS, INC.,          :
                                                              :
                    Defendants.                        :
-------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR APPROVAL OF AN ORDER
APPROVING SETTLEMENT NOTICE**

# TABLE OF CONTENTS

**Page**

I. BACKGROUND ...................................................................................... 1

    A. Plaintiffs' Legal Claims and Procedural History of the Actions ........................... 2

II. SETTLEMENT ..................................................................................... 4

    A. The Mediation .............................................................................. 4

    B. The Settlement. ............................................................................ 5

III. ARGUMENT ...................................................................................... 7

    A. The Legal Standards for Preliminary Approval of a Class Claim ........................ 8

    B. The Settlement of the Class Claims Meet the Revised Rule 23 Standards for Preliminary Approval ....................................................................... 9

        1. The Court "will likely be able to . . . approve the proposal under Rule 23(e)(2)" ................................................................................ 9

            a. Rule 23(e)(2)(A):  The class representatives and class counsel have adequately represented the class. .......................................... 10

            b. Rule 23(e)(2)(B):  The proposal was negotiated at arm's length.. 11

            c. Rule 23(e)(2)(C)(i):  The relief provided for the Settlement Class is adequate, taking into account the costs, risks, and delay of trial and appeal. .............................................................. 12

            d. Rule 23(e)(2)(C)(ii):  The relief provided for the class is adequate, taking into account the effectiveness of the proposed method of distributing relief to the class including the method of processing class-member claims if required. ............................................ 14

            e. Rule 23(e)(2)(C)(iii):  The terms of any proposed award of attorney's fees, including the timing of payment. ........................ 14

            f. Rule 23(e)(2)(C)(iv):  Any agreement required to be identified under Rule 23(e)(3). ................................................... 15

            g. Rule 23(e)(2)(D):  The proposal treats class members equitably relative to each other. ................................................... 16

        2. The Court "will likely be able to certify the class" for settlement purposes .............................................................................. 16

        3. The Proposed Notice Satisfies Fed. R. Civ. P. 23(c)(2)(B) ..................... 22

C.      The Court Should Appoint the *Kawa* Plaintiffs as Representatives of the Settlement Class and Undersigned Firms as Settlement Class Counsel .............. 23

D.      The Legal Standards for Preliminary Approval of an FLSA Claim .................... 24

E.      The Settlement of the Collective Claims Should Be Preliminarily Approved ..... 25

IV.   CONCLUSION............................................................................................................. 26

# TABLE OF AUTHORITIES

**<u>Cases</u>**                                                                                        **<u>Page(s)</u>**

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................ 17, 21

*Baby Neal v. Casey*,
    43 F.3d 48 (3d Cir. 1994) ........................................................ 17, 18

*Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*,
    2016 U.S. Dist. LEXIS 124202 (E.D. Pa. Sept. 12, 2016) .................................... 11

*Brown v. TrueBlue, Inc.*,
    2013 U.S. Dist. LEXIS 137349 (M.D. Pa. Sept. 24, 2014) .................................... 24

*Brumley v. Camin Cargo Control, Inc.*,
    2012 U.S. Dist. LEXIS 40599 (D.N.J. March 26, 2012) ...................................... 15

*Craig v. Rite Aid Corp.*, No. 4:08-cv-2317,
    2013 U.S. Dist. LEXIS 2658 (M.D. Pa. Jan. 7, 2013) ....................................... 13, 18, 19, 21

*Creed v. Benco Dental Supply Co.*,
    2013 U.S. Dist. LEXIS 132911 (M.D. Pa. Sept. 17, 2013) ................................... 25

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (2000) ................................................................ 3, 4

*Girsh v. Jepsen*,
    521 F.2d 153 (3d Cir. 1975) ...................................................... 24, 25

*Gunter v. Ridgewood Energy Corp.*
    223 F.3d 190 (3d Cir. 2000) ...................................................... 14

*Hall v. Accolade, Inc.*,
    2019 U.S. Dist. LEXIS 143542 (E.D. Pa. Aug. 22, 2019) .................................... 9

*Hall v. Accolade, Inc.*,
    2020 U.S. Dist. LEXIS 52632 (E.D. Pa. Mar. 25, 2020) ..................................... 21

*In re Ins. Brokerage Antitrust Litig.*,
    297 F.R.D. 136 (D.N.J. 2013) ..................................................... 15

*In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, No. 06-3202,
    2009 WL 2137224 (E.D. Pa. July 16, 2009) ................................................ 20

*In re National Football League Players' Concussion Injury Litigation*,
    301 F.R.D. 191 (E.D. Pa. 2014) .................................................... 9

*In re National Football League Players' Concussion Injury Litigation*,
    821 F.3d 410 (3d Cir. 2016) ...................................................... 10

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
   2019 U.S. Dist. LEXIS 13481 (E.D.N.Y. Jan. 28, 2019) ...................................................... 9

*In re Prudential Insurance Company America Sales Practice Litig.*,
   148 F.3d 283 (3d Cir. 1998) ......................................................................... 14, 15, 20

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004) .............................................................................. 10

*Layer v. Trinity Health Corp.*,
   2019 U.S. Dist. LEXIS 185211 (E.D. Pa. Oct. 23, 2019) ...................................................... 9

*Lincoln Adventures LLC v. Those Certain Underwriters at Lloyd's, London Members*,
   2019 U.S. Dist. LEXIS 171917 (D.N.J. Oct. 3, 2019) .......................................................... 15

*Lynn's Food Stores, Inc. v. United States*,
   679 F.2d 1350 (11th Cir. 1982) .......................................................................... 24

*Marcus v. BMW of N. Am., LLC*,
   687 F.3d 583 (3d Cir. 2012) .............................................................................. 17

*McGee v. Ann's Choice, Inc.*,
   2014 U.S. Dist. LEXIS 75840 (E.D. Pa. June 4, 2014) ......................................................... 24

*Rendler v. Gambone Brothers Development Co.*,
   182 F.R.D. 152 (E.D. Pa. 1998) ........................................................................... 17

*Reyes v. Netdeposit, LLC*,
   802 F.3d 469 (3d Cir. 2015) .......................................................................... 16, 17

*Roberts v. TJX Corp.*,
   2016 U.S. Dist. LEXIS 136987 (D. Mass. Sept. 30, 2016) ...................................................... 13

*Rodriguez v. National City Bank*,
   726 F.3d 372 (3d Cir. 2013) .............................................................................. 17

*Romero v. La Revise Assocs., LLC*,
   58 F. Supp. 3d 411 (S.D.N.Y. 2014) ....................................................................... 25

*Smith-Centz v. Safran Turney Hospitality*,
   2019 U.S. Dist. LEXIS 123955 (E.D. Pa. July 23, 2019) ........................................................ 9

*Stewart v. Abraham*,
   275 F.3d 220 (3d Cir. 2001) .............................................................................. 18

*Thompson v. Costco Wholesale Corp., No. 14-CV-2778-CAB-WVG*,
   2017 WL 697895 (S.D. Cal. Feb. 22, 2017) ................................................................. 25

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016) ................................................................................... 20

iv

*Weiss v. York Hospital*,
    745 F.2d 786 (3d Cir. 1984) ............................................................... 19

## Codes, Statutes and Other Regulations

29 U.S.C. § 216(b) ................................................................................... 24

Fed. R Civ. P. 23 ............................................................................ *passim*

Cal. Lab. Code §2698 ................................................................................ 5

## Secondary Source

William Rubenstein, Alba Conte, and Herbert B. Newberg,
    *Newberg on Class Actions* §4:69 ....................................................... 20

Plaintiffs Steven Goodman, Barbara Kawa, Theresa Massey, Danielle Solecki (collectively "Plaintiffs") submit this memorandum in support of their motion for an Order Approving Settlement Notice ("Notice Order") with regard to the proposed settlement of both of the above-captioned actions ("Actions") for the sum of $19,613,900 to be paid by Defendants (the "Settlement"). The Settlement, if approved by this Court, would resolve all of the claims of the current members of the certified collective in *Goodman v. Burlington Coat Factory Warehouse Corporation, et al.*, Case No. 11-cv-4395 (D. NJ.) (the "*Goodman* Action"), and the claims of the members of the state classes alleged in *Kawa, et al. v. Burlington Stores, Inc., et al.,* Case No. 14-cv-2787 (D. NJ.) (the "*Kawa* Action"). The Settlement was reached after almost nine years of litigation in *Goodman,* and two days of mediation before an experienced mediator in the type of claims asserted in the Actions.

The Settlement is memorialized in the Settlement Agreement attached as Exhibit A to the accompanying Declaration of Seth R. Lesser ("Lesser Dec."). It represents an average gross amount of $12,003 for each of the 539 Collective Members and 1,095 Settlement Class Members, which constitutes an excellent result for a FLSA/state law misclassification case. *See* pages 7-8, below. For the reasons set forth below, this Court should preliminarily approve the Settlement, certify the *Kawa* Settlement Class defined below (the "Settlement Class") and direct notice to be provided to the Collective and Settlement Class Members because the Court "will likely be able to" grant final approval of the Settlement under the criteria applicable to the settlement of claims under the Fair Labor Standards Act ("FLSA") and the criteria described in Federal Rule of Civil Procedure 23(e)(2). *See* Fed. R. Civ. P. 23(e)(1)(B)(i)-(ii).

## I.     BACKGROUND

Defendants (collectively referred to herein as "Burlington") operate a nationwide off-

price retail chain in 44 states across the United States.  *See* Opinion granting Plaintiffs' Motion for Conditional Certification of a Collective Action (Dkt. 114) at 2; Lesser Dec. ¶ 2.  As part of its operations, Burlington employs Assistant Store Managers ("ASMs") and classifies them as exempt under the FLSA and state labor laws and does not pay them for overtime hours worked above 40 in a workweek.  Lesser Dec. ¶ 2.  Plaintiffs allege in the Actions that they and the ASMs who are Collective and Settlement Class Members are misclassified as exempt from having to pay overtime in violation of the FLSA and the corresponding labor laws of California, New York and Illinois. *Id.*

### A.    Plaintiffs' Legal Claims and Procedural History of the Actions

On July 29, 2011, the *Goodman* Action was filed in this Court.  Goodman alleged, on behalf of himself and all similarly situated ASMs, that Burlington had misclassified its ASMs as exempt under the FLSA.  Lesser Dec. ¶ 3.  Following discovery on the limited issue of whether ASMs are similarly situated under the FLSA, on November 20, 2012, this Court granted Goodman's motion for conditional certification of the collective and directed notice be sent to members of the conditionally certified collective.  *See* Dkt. 114; *id.*  After notice went out, approximately 580 additional ASMs joined as Opt-ins to pursue claims for unpaid overtime (a number which has, over time, been reduced to the current 539 Opt-Ins).  Lesser Dec. ¶ 3.

After the deadline to join the *Goodman* Action, the parties engaged in wide-ranging merits discovery regarding whether Burlington misclassified ASMs as exempt and if so, whether such misclassification was willful and lacked a good faith basis.  Lesser Dec. ¶ 4.  This merits discovery included 28 Opt-in depositions across the country, seven depositions of Burlington corporate witnesses, and multiple sets of written discovery that resulted in over a half million pages of documents produced by Burlington that were reviewed by Plaintiffs' counsel.  *Id.*

There was also extensive expert discovery, including expert depositions, after exchanging detailed expert reports on the issue of whether Burlington improperly classified ASMs as exempt under the FLSA.  Lesser Dec. ¶ 5.  On November 18, 2014, after the parties completed expert discovery, Goodman filed a Motion to Preclude the Testimony of Burlington's Expert (Robert Crandall) pursuant to *Daubert v. Merrell Dow Pharmaceuticals*, Inc., 509 U.S. 579 (2000) (Dkt 338) ("*Daubert* Motion"); *id.*  In connection with this *Daubert* Motion, the Court held four days of in-court hearings, with live witnesses and oral argument.  These hearings took place on December 8-9, 2015 and March 16-17, 2016.  Dkts. 395. 396, 407, 408; Lesser Dec. ¶ 5.  On September 20, 2019, the Court entered an Order granting in part and denying in part Goodman's *Daubert* Motion.  Lesser Dec. ¶ 5.

After merits and expert discovery ended, and also after Goodman filed his *Daubert* Motion, on November 18, 2014, Burlington filed a motion to decertify the collective, and Goodman filed a competing motion for final certification. Dkts. 341 and 348, respectively; Lesser Dec. ¶ 4.  On November 20, 2019, after oral argument during the hearings noted above, this Court granted Goodman's motion for final certification of the collective and denied Burlington's motion to decertify. Dkt. 451; Lesser Dec. ¶ 6.  This ruling eliminated the last obstacle to a trial of the *Goodman* Action, aside from damages discovery.  Lesser Dec. ¶ 6.

Prior to these rulings, on May 1, 2014, Plaintiffs Barbara Kawa, Theresa Massey, and Danielle Solecki (the "*Kawa* Plaintiffs") commenced the *Kawa* Action.  Lesser Dec. ¶ 7.  The *Kawa* Plaintiffs alleged, on behalf of themselves and classes of Burlington ASMs who worked in California, New York and Illinois that Burlington had misclassified these ASMs as exempt under the laws of California, New York and Illinois.  *Id.*  On July 9, 2014, Burlington filed a Motion to Dismiss and/or Stay the *Kawa* Action pending the conclusion of the *Goodman* Action. Dkt. 16;

3

*id*.  On March 30, 2015, the Court issued an order staying the *Kawa* Action, pending the outcome of the *Goodman* Action.  Lesser Dec.  ¶ 7.  On May 8, 2020, the *Kawa* Action was reassigned from Magistrate Judge Williams to Magistrate Judge Schneider.  *Id*.

## II.   SETTLEMENT

### A.   The Mediation

After the *Daubert* Motion was decided and after this Court granted Goodman's motion for final certification, and while the parties were waiting for a date on which the Court would hold a collective trial with representative witnesses, the parties began discussing potential resolution of the Actions.  Lesser Dec. ¶ 8.  They agreed to retain David Geronemus, of JAMS, to serve as a mediator.  *Id*.  Mr. Geronemus is considered one of the preeminent mediators in the country and has helped resolve numerous multi-million-dollar class and collective action settlements.  *Id*.

In advance of the mediation, as a result of (1) the extensive discovery; (2) their working with numerous ASMs who had opted-into the *Goodman* Action and who were also putative class members in the *Kawa* Action, and (3) of the comprehensive briefing on the motions for decertification and final certification as well as the briefing and hearings on the *Daubert* motion, Plaintiffs' counsel were thoroughly versed in the strengths and weaknesses of the claims asserted in both *Goodman* and *Kawa*.  Lesser Dec. ¶ 9.  In addition, with regard to damages, the one topic as to which there had not been discovery, prior to the mediation, Plaintiffs' counsel sent detailed requests for data related to damages of Collective and Settlement Class Members, such as total weeks worked by each group, their hours worked per week, and their salaries.  *Id*.  Burlington responded by providing, for each group, their average salary during the relevant time periods, average number of weekly hours worked, and total number of weeks worked during the relevant time periods. *Id*.  Burlington determined the average number of weekly hours worked from time

records completed by Collective and Settlement Class Members, which in other cases like this, are typically not completed by the employees at issue. *Id.* Plaintiffs' counsel asked multiple questions of Burlington concerning the data in order to satisfy themselves that the information provided was accurate. *Id.* After this careful review, Plaintiffs' counsel were fully informed of Burlington's full potential exposure as to the issues and risks presented in the cases and at trial. *Id.; see* pages 10-11, below.

The mediation lasted two entire days: starting on June 2, 2020, with discussions continuing on June 3, 2020. Lesser Dec. ¶ 10. Sometime after 8:00 PM on June 3rd, after extensive efforts by the mediator, the parties finally reached an agreement in principle to resolve the *Goodman* and *Kawa* Actions for $19,613,900 and executed a Memorandum of Understanding ("MOU"). *Id.*

### B.   The Settlement.

The Settlement's principal terms are briefly summarized below.

1.   The "Total Maximum Settlement Amount" is $19,613,900 and includes the (1) Payments to the *Goodman* Collective (2) Payments to the *Kawa* Settlement Class (3) Incentive Payments, (4) Attorneys' Fees and Litigation Expenses Payment, (5) PAGA Payment to the LWDA,[1] and (6) Administrator Payment. The Total Maximum Settlement Amount is all-in with no reversion to Defendants and any amounts due under the Settlement, if approved, shall be paid 10 business days following the date on which a final approval order is no longer subject to any appellate review.

2.   The Parties stipulate, for settlement purposes only, to the certification of a Settlement Class consisting of all ASMs employed by Burlington at its stores in the States of California, New York and Illinois during the following periods:

a. California: May 1, 2010 through entry of the Notice Order

---

[1] PAGA stands for California's "Private Attorneys General Act", which is a civil penalties provision under California law. Cal. Lab. Code §2698 *et seq*. The Settlement allocates $15,000 (the "PAGA Payment") to resolve PAGA claims, of which 75% ($11,250) will be allocated to California's Labor and Workforce Development Agency ("LWDA") and 25% ($3,750) will be allocated to the Collective and Settlement Class Members from California pursuant to PAGA.

     b. New York: May 1, 2008 through entry of the Notice Order
     c. Illinois: May 1, 2011 through entry of the Notice Order

3. The Settlement Class Members will be afforded a right to opt-out. Both Collective Members and Settlement Class Members will be afforded a right to object to the Settlement.

4. The Net Settlement Sum (the portion left from the Total Maximum Settlement Amount after deducting the Named Plaintiff Awards, the Attorneys' Fees and Costs Payment, the PAGA Payment to the LWDA, and the Administrator Payment) shall be allocated to payments to the *Goodman* Collective Members and the *Kawa* Settlement Class Members in proportion to the weeks each represents. The Net Settlement Sum will be distributed to Collective and Settlement Class Members based on their pro rata share of work weeks as ASMs during the relevant time period, exclusive of leaves of absence (if any). Each Collective and Settlement Class Member shall receive a Settlement Payment of no less than $250.

5. The portion of the PAGA Payment allocated to Collective and Settlement Class Members who worked as ASMs in California during the relevant time period will be paid pro rata to each eligible Collective and Settlement Class member.

6. 50 percent of the Settlement Payments shall be allocated as wages and 50 percent shall be allocated as liquidated damages, penalties and interest in light of the claims asserted. It is intended that the amount treated as wages shall be subject to regular withholding and deductions for which, at the appropriate time, an IRS Form W-2 shall issue. For that amount treated as liquidated damages, penalties and/or interest, there shall be no withholding or deductions, and, at the appropriate time, an IRS Form 1099 shall issue. Burlington shall be responsible for its portion of the payroll taxes on the amount attributable to wages.

7. In return for the consideration provided under the Settlement, the Settlement Class Members who have not timely and validly opted out, including their heirs, agents, representatives, successors, assigns and estates, shall be deemed to have fully, finally and forever, irrevocably and unconditionally released, remised, and discharged the Released Parties from any and all suits, actions, causes of action, claims, obligations, rights, liabilities, penalties, or demands, whether known or unknown, that were or could have been asserted (whether in tort, contract, or otherwise), for violation of local, state, and federal law arising out of, or relating to claims that Burlington improperly classified the Settlement Class Members as exempt ASMs, including but not limited to the claims alleged in the operative *Kawa* complaint though the date of the approval of the Settlement Notice ("Settlement Class Member Release").

8. In return for the consideration provided under the Settlement, the Collective Members (which includes some Settlement Class Members) including their heirs, agents, representatives, successors, assigns and estates, shall be deemed to have fully, finally and forever, irrevocably and unconditionally released, remised, and discharged the Released Parties from any and all suits, actions, causes of action, claims, obligations, rights, liabilities, penalties, or demands, whether known or unknown, that were or could have been asserted (whether in tort, contract, or otherwise) for violation of local, state, and federal law arising out of, or relating to claims that Burlington improperly classified the Collective Members as exempt ASMs, including but not limited to claims that Burlington failed to provide all overtime wages due through date of the approval of the Settlement Notice ("Collective Member Release").

9. Subject to Court approval, Class Counsel shall be entitled to up to one third of the Total Maximum Settlement Amount as attorneys' fees and their reasonable actual costs ("Attorneys' Fees and Costs Payment").

10. Subject to Court approval, Incentive Payments of up to $10,000 each for a total of $40,000 shall be paid from the Total Maximum Settlement Amount to the Named Plaintiffs in the Actions, Steven Goodman, Barbara Kawa, Theresa Massey, and Danielle Solecki.

Lesser Dec. ¶11. The complete settlement terms are set forth in the Settlement Agreement.

(Lesser Dec at Exhibit A).

## III. ARGUMENT

This Settlement would, if approved by the Court, resolve the FLSA and state claims of the *Goodman* Collective Members and *Kawa* Settlement Class Members. Plaintiffs below will demonstrate why the Settlement should be preliminarily approved, first as to the *Kawa* Settlement Class (which has a slightly higher standard) and then as to the *Goodman* Collective.

Of note, Plaintiffs believe that the recovery here is not merely adequate—it is a truly excellent result. Lesser Dec. ¶ 12. Class Counsel understands that the $19,613,900 is the second largest wage and hour settlement in this Court, after the *Staples* settlement cited immediately below. *Id*. The gross recovery is $12,003 per Collective and Settlement Class Member. *Id*. Although every case is different, in the undersigned counsel's last three

settlements in this Circuit of retail chain store mid-manager misclassification claims, the gross

recoveries were, respectively, $9,038 per person (*Fischer v. Kmart Corp.*, No. 13-cv-4116

(D.N.J.) (final approval granted Nov. 2, 2016)), $11,838 (*McKee v. PetSmart, Inc.*, 1:12-cv-

01117-SLR-SRF (D. Del.) (final approval granted July 27, 2015)), and $2,001 per person

(*Hegab v. Family Dollar Stores, Inc.*, No. 11-cv-1206-CCC-JAD (final approval granted March

9, 2015)). *Id.* In this Court's largest FLSA/state law collective/class settlement (same counsel

as this case), the *Stillman v. Staples* case, also a retail chain store misclassification case, the

average gross recovery was $5,952 (Case No. No. 2:08-cv-5746 (KSH)(PS), MDL 2025 (final

approval granted November 4, 2011) ($42 million class and collective action settlement); *cf.

also, e.g., Nash v. CVS Caremark Corp.*, 1:09-cv-00079 (D.R.I.) (final approval order dated

Apr. 9, 2012) (where average gross class member amount $1,760, court termed the result

"magnificent."). *Id.* The excellent $12,003 average gross recovery number here is undoubtedly

a fair, reasonable, and adequate result. *Id.*

### A.     The Legal Standards for Preliminary Approval of a Class Claim

The preliminary approval of the settlement of a class claim has been governed by Rule

23 of the Federal Rules of Civil Procedure. Rule 23 was amended recently effective December 1,

2018. Under a new heading reading "Grounds for Decision to Give Notice," the Rule now

specifically addresses the standard for *preliminary* review of class action settlements:

(e)     Settlement, Voluntary Dismissal, or Compromise. The claims, issues, or
defenses of a certified class – or a class proposed to be certified for
purposes of settlement – may be settled, voluntarily dismissed, or
compromised only with the court's approval. The following procedures
apply to a proposed settlement, voluntary dismissal, or compromise:

(1)     *Notice to the Class.*

(A)     *Information That Parties Must Provide to the Court.* The
parties must provide the court with information sufficient to
enable it to determine whether to give notice of the proposal

to the class.

(B)    *Grounds for a Decision to Give Notice.* The court must direct  notice in a reasonable manner to all class members who would be bound  by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.

Fed. R. Civ. P. 23(e)(1).[2]

## B.    The Settlement of the Class Claims Meet the Revised Rule 23 Standards for Preliminary Approval

As noted above, amended Rule 23(e) establishes that, at the "preliminary approval" stage, a district court must address two questions: (1) whether it "will likely be able to . . . approve the proposal under Rule 23(e)(2)," and (2) whether it "will likely be able to . . . certify the class for purposes of judgment on the proposal."  As discussed below, both requirements are satisfied:

### 1.    The Court "will likely be able to . . . approve the proposal under Rule 23(e)(2)"

To determine whether the Court "will likely be able to . . . approve the proposal under Rule 23(e)(2)," it must look to Rule 23(e)(2)'s newly-minted approval factors.  These factors appear under a heading reading "Approval of the Proposal":

(2)    *Approval of the Proposal.* If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

---

[2] Prior to December 1, 2018, the standard for "preliminary approval" of class action settlements was not explicitly addressed in Civil Rule 23 and varied from circuit to circuit.  *See, e.g., In re National Football League Players' Concussion Injury Litigation,* 301 F.R.D. 191, 197-98 (E.D. Pa. 2014) (summarizing Third Circuit standard).  Amended Rule 23, however, "alter[s] the standards that guide a court's preliminary approval analysis," *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 2019 U.S. Dist. LEXIS 13481, *118 (E.D.N.Y. Jan. 28, 2019), and now "explicitly identifies the factors that courts should apply in scrutinizing proposed class settlements," *Hall v. Accolade, Inc.*, 2019 U.S. Dist. LEXIS 143542, *5-6 n.1 (E.D. Pa. Aug. 22, 2019); *see also, e.g., Smith-Centz v. Safran Turney Hospitality*, 2019 U.S. Dist. LEXIS 123955 (E.D. Pa. July 23, 2019) (following new rule); *Layer v. Trinity Health Corp.*, 2019 U.S. Dist. LEXIS 185211 (E.D. Pa. Oct. 23, 2019) (same).

(A)     the class representatives and class counsel have adequately represented the class;

(B)     the proposal was negotiated at arm's length;

(C)     the relief provided for the class is adequate, taking into account:

    (i)     the costs, risks, and delay of trial and appeal;

    (ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)     the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv)     any agreement required to be identified under Rule 23(e)(3); and

(D)     the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  As discussed below, Plaintiffs will likely satisfy each of these factors:

### a.     Rule 23(e)(2)(A):  The class representatives and class counsel have adequately represented the class.

This factor focuses "on the actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23 Advisory Committee Notes (Dec. 1, 2018) (hereafter "Advisory Committee Notes"); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 531 (3d Cir. 2004) (class counsel should have "adequate appreciation of the merits of the case before negotiating"); *In re National Football League Players' Concussion Injury Litigation*, 821 F.3d 410, 439 (3d Cir. 2016) (plaintiffs' counsel should "develop[] enough information about the case to appreciate sufficiently the value of the claims.").

Here, this factor is likely to be satisfied.  Although the *Kawa* Action is stayed, Plaintiffs were exceedingly well informed of the facts regarding the claims in *Kawa*.  Lesser Dec. ¶ 13.  To all intents and purposes the claims were the exact same as in *Goodman* and Plaintiffs' counsel had the full record of discovery in *Goodman*, both as to ASMs and what they do and as to

Burlington's policies and procedures, and had further supplemented that knowledge through the depositions and interviews with the ASMs in *Goodman* who were included in the *Kawa* putative class, and Plaintiff would have substantially been able to argue from the rulings obtained in *Goodman* – particularly the final certification decision – in order to advance the *Kawa* case. *Id.* Additionally, before the mediation, Plaintiffs obtained information from Defendants necessary to calculate the alleged damages of the Settlement Class Members. *Id.* Plaintiffs were thus well versed in the strengths and weaknesses of their claims at the time of the mediation. *Id.* That Plaintiffs vigorously pursued the claims of the Settlement Class is also confirmed by the fact Plaintiffs opposed Defendants' argument that its arbitration agreement applied to certain Settlement Class Members who will share in the Settlement proceeds on the same basis as the Collective Members and those Settlement Class Members who did not sign arbitration agreements – based on the number of weeks they worked. *Id.* It is therefore likely that the Court will find this factor to be satisfied.

> **b.**      **Rule 23(e)(2)(B):  The proposal was negotiated at arm's length.**

This factor focuses on whether the settlement negotiations "were conducted in a manner that would protect and further the class interests." Advisory Committee Notes. Here, this factor is likely to be satisfied because the settlement was achieved through arm's-length negotiations between the parties, over two days, with the assistance of an experienced neutral third-party mediator. Lesser Dec. ¶ 14. "'[T]he participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties.'" *Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, 2016 U.S. Dist. LEXIS 124202, *15 (E.D. Pa. Sept. 12, 2016).

     **c.**    **Rule 23(e)(2)(C)(i):  The relief provided for the Settlement Class is adequate, taking into account the costs, risks, and delay of trial and appeal.**

This factor recognizes that while the "relief that the settlement is expected to provide to class members is a central concern," such relief must be viewed in relation to "the cost and risk involved in pursuing a litigated outcome."  Advisory Committee Notes.  This analysis "cannot be done with arithmetic accuracy, but it can provide a benchmark for comparison with the settlement figure."  *Id.*

Here, this factor is also likely to be satisfied.  Absent settlement, the costs and risks associated with the *Kawa* and *Goodman* Actions would have been significant.  Lesser Dec.  ¶ 15. As noted above, the Court would be required to resolve the *Kawa* Plaintiffs' anticipated motion for class certification in which the *Kawa* Plaintiffs would have sought certification of a class of all ASMs who worked in New York, California and Illinois from May 1, 2008, May 1, 2010 and May 1, 2011, respectively, through the time of certification.  *Id.*  This would have been a highly contested motion, following class discovery in which Burlington would have maintained that certain members of the class were subject to its arbitration agreement and that the nature of its ASM position changed since 2014, when certain Collective Members were deposed in the *Goodman* Action.  *Id.*  While the *Kawa* Plaintiffs believe that this Court would likely reject any attempt by Defendants to create material differences in the Settlement Class Members for the same reasons it denied Defendants' motion to decertify the Collective and granted Plaintiff Goodman's Motion for Final Certification of the Collective, and would certify the Settlement Class, such a ruling would likely be at least six months from now (if not longer given the pandemic) and, if the *Kawa* Plaintiffs prevailed on this motion, Defendants could seek a Rule 23(f) appeal to the Third Circuit, further delaying any trial of the class claims, and quite possibly

separating them from being able to be tried with the *Goodman* claims (even assuming class certification was ruled upon prior to the *Goodman* trial). *Id.* This is even besides the litigation risk that misclassification cases present as is well recognized. *Id.* Even assuming certification of the *Kawa* class, there would have been "attendant risks" of litigation, including a large number of "contingencies" that could have "impact[ed] Plaintiffs' possible recovery" including, for instance, "…the method of calculating damages, proving willfulness in order to extend the statute of limitations by one year in order to obtain an additional year of damages under FLSA, and showing lack of good faith in order to get liquidated damages," which was in addition to the risk presented by alternative methodologies by which damages could be shown. *Roberts v. TJX Corp.*, 2016 U.S. Dist. LEXIS 136987, at *27-28 (D. Mass. Sept. 30, 2016) (approving class settlement in similar retail chain misclassification case); *id.* Or, as Judge John Jones III said in approving another hybrid FLSA retail chain store mid-level manager misclassification case settlement, "[i]t is undisputed that copious risks abound with respect to maintaining this action and establishing liability." *Craig v. Rite Aid Corp.*, No. 4:08-cv-2317, 2013 U.S. Dist. LEXIS 2658, at *38 (M.D. Pa. Jan. 7, 2013). Lesser Dec. ¶ 15.

Further, even if the *Goodman* Action were tried first, potential appeals could delay the final outcome of that case for several years and a trial of the *Kawa* Action until such an appeal was resolved. Lesser Dec. ¶ 16. And even if both Actions were tried together, the likely appeal of any jury verdict would delay any recovery to the Settlement Class Members for years. *Id.* In sum, continued adversarial litigation would be a long, highly contested and expensive process for the Settlement Class, with no guarantee of any recovery at all. *Id.* Given these risks and delays, the Settlement that will provide an average recovery of $12,003 is adequate. *Id.*

13

**d.**     **Rule 23(e)(2)(C)(ii):  The relief provided for the class is adequate, taking into account the effectiveness of the proposed method of distributing relief to the class including the method of processing class-member claims if required.**

Under this factor, the court "scrutinize[s] the method of claims processing to ensure that it facilitates filing legitimate claims" and "should be alert to whether the claims process is unduly demanding."  Advisory Committee Notes.  This factor is likely to be satisfied, first, because this a case in which the Settlement Class is a defined group of individuals ascertainable by Defendants' records, and, second, because the Settlement Class Members do not have to file a claim form to receive a Settlement Payment.  *See* Settlement Agreement at ¶ 8(m).   If the Settlement is approved, they, like the *Goodman* Collective Members, will be directly paid.  Moreover, every Settlement Class Member will receive an individualized notice form that explains the Settlement and specifies his/her anticipated Settlement Payment amount and how it was calculated.  *See id*. at ¶ 1 and the form of Notice, attached as Ex. 3 to the Settlement Agreement.

**e.**     **Rule 23(e)(2)(C)(iii):  The terms of any proposed award of attorney's fees, including the timing of payment.**

This factor recognizes that "[e]xamination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed settlement."  Advisory Committee Notes.  Here, Plaintiffs' counsel shall be permitted to seek, and Burlington will not oppose, up to 33 1/3% of the Total Maximum Settlement Amount ($6,537,966.67) as attorneys' fees, plus an additional amount not to exceed $348,000 for reasonable litigation expenses and costs.  *See* Settlement Agreement at ¶ 5.

At the final approval stage, Plaintiffs will fully brief the fairness and reasonableness of the requested attorneys' fees and expenses under the factors articulated by the Third Circuit in *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000), and *In re Prudential Insurance*

*Company America Sales Practice Litig.*, 148 F.3d 283 (3d Cir. 1998).  In the meantime, it is likely that the amount and timing of the proposed attorneys' fees and expenses will support final approval because the proposed award is justified here given the nine years of extensive litigation that led to the Settlement and is a percentage of the benefit obtained that is well within the range of percentage of the fund recoveries approved by this Court in similar sized class action settlements.  Lesser Dec. ¶ 17.  As will be set forth in greater detail as the time of final approval, Plaintiffs' counsel have devoted, to date, in excess of 5,500 hours to these cases, and incurred nearly $348,000 in costs and expenses.  *Id.*  "The Third Circuit has noted that fee awards generally range from 19% to 45% of the settlement fund when the percentage-of-recovery method is utilized to assess the reasonableness of requested attorneys' fees." *Brumley v. Camin Cargo Control, Inc.*, 2012 U.S. Dist. LEXIS 40599, *36-37 (D.N.J. March 26, 2012); *see also Lincoln Adventures LLC v. Those Certain Underwriters at Lloyd's, London Members*, 2019 U.S. Dist. LEXIS 171917, *18 (D.N.J. Oct. 3, 2019) ("Courts in the Third Circuit, including this one, have viewed fee percentages of 33% as reasonable."); *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 155 (D.N.J. 2013) (approving 33% fee award in MDL 1663).  Further, the cross-check multiplier, which will be under a 2x, will be well within the range approved by courts in this Circuit.  Lesser Dec. ¶ 17.

### f.   Rule 23(e)(2)(C)(iv):  Any agreement required to be identified under Rule 23(e)(3).

Rule 23(e)(3) requires settling parties to "file a statement identifying any agreement made in connection with the proposal."  Here, besides the MOU negotiated by the parties immediately after the mediation, which is superseded by the Settlement Agreement, there are no "side agreements" concerning this settlement.  Thus, this factor is likely to be satisfied.

15

g.    **Rule 23(e)(2)(D):  The proposal treats class members equitably relative to each other.**

This factor seeks to prevent the "inequitable treatment of some class members *vis-a-vis* others."  Advisory Committee Notes.  This factor is likely to be satisfied.  As noted in Section II.B.3, *supra*, all Settlement Class Members and Collective Members will receive their awards based on the same pro rata formula based upon weeks worked with a minimum Settlement Payment of $250; *i.e.*, they are treated equally.[3]  This is the most common method of settling FLSA/analog state law wage and hour claims and has been, as best Plaintiffs' counsel is aware, always accepted by courts.  Lesser Dec. ¶ 18.

2.    **The Court "will likely be able to certify the class" for settlement purposes**

Having determined that the Court "will likely be able to . . . approve the proposal under Rule 23(e)(2)," we turn to the second half of the preliminary approval inquiry: whether the Court "will likely be able to . . . certify the class" for settlement purposes.  Fed. R. Civ. P. 23(e)(1)(B)(ii).  Here, Plaintiffs will ask the Court to certify a Settlement Class consisting of all ASMs employed by Burlington in the States of California, New York and Illinois during the following periods:

a. California: May 1, 2010 through entry of the Notice Order
b. New York: May 1, 2008 through entry of the Notice Order
c. Illinois: May 1, 2011 through entry of the Notice Order

Settlement Agreement at 3 "Settlement Class."  This class includes 1,095 individuals.  *Id.*

To obtain class certification, Plaintiffs must satisfy Rule 23(a)'s four requirements: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.  *Reyes v.*

---

[3] In light of the nature of California law, the $3,750 PAGA Payment to the California Collective and Settlement Class Members will cause them to receive approximately $7.89 more than the other Settlement Members, which Class Counsel believes to be an immaterial amount.

*Netdeposit, LLC*, 802 F.3d 469, 482 (3d Cir. 2015).  Next, they must satisfy Rule 23(b)(3)'s two additional requirements: (5) common questions of law or fact must "predominate over any questions affecting only individual members" and (6) "a class action [must be] superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  In connection with a settlement class, the Court need not consider the 23(b)(3)'s manageability requirement.  *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 620 (1997).  As discussed below, Plaintiffs maintain they are likely to satisfy the six Rule 23 requirements:

**Numerosity:**  Rule 23(a)(1)'s numerosity requirement is satisfied where a class is "so numerous that joinder of all members is impracticable."  *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 595 (3d Cir. 2012).  Here, Plaintiffs assert that numerosity is met because the Settlement Class includes 1,095 individuals.  *See Rendler v. Gambone Brothers Development Co.,* 182 F.R.D. 152, 157 (E.D. Pa. 1998) ("Classes in excess of one hundred members are typically found to satisfy the numerosity requirement.").  The existence of 1,095 Settlement Class Members easily satisfies this requirement.

**Commonality:**  The commonality "bar is not a high one," *Rodriguez v. National City Bank,* 726 F.3d 372, 382 (3d Cir. 2013), and courts have found "is easily met," *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).  Commonality "does not require perfect identity of questions of law or fact among all class members."  *Reyes*, 802 F.3d at 486.  Since "'even a single common question will do,'" *id.* (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011)), commonality is satisfied if "'plaintiffs share at least one question of fact or law with the grievances of the prospective class.'" *id.* (quoting *Rodriguez*, 726 F.3d at 382).

Here, Plaintiffs assert the commonality requirement is satisfied because, *inter alia*, each of the proposed Settlement Class Members worked in the same position at Burlington, under the

same job descriptions and corporate policies (including its national governance operational standards), and under a uniform method of compensation under which they allegedly performed non-exempt tasks a majority of their time, worked over 40 hours per week and did not receive overtime compensation for their hours worked over 40 hours per week. *See* Opinion Granting Final Certification and Denying Decertification in *Goodman* (Dkt. 450) ("Final Cert. Opinion") at 32-33. These facts are sufficient to satisfy the commonality requirement. *See, e.g., Craig v. Rite-Aid Corp.*, 2013 U.S. Dist. LEXIS 2658, at *26-27 (finding commonality for final approval purposes met in similar retail chain ASM case because, "[h]ere, the core issue as identified by both the parties and the courts entertaining these consolidated cases is and has always been whether Rite Aid's designation of ASMs as exempt from overtime compensation was proper under the FLSA, its analogous state law counterparts, or both. The ability of each Class Member to recover is directly related to resolution of this central legal issue. Accordingly, we find that commonality is amply satisfied by the proposed class.").

**Typicality:** Rule 23(a)(3)'s typicality requirement "is intended to assess whether the action can be efficiently maintained as a class action and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." *Baby Neal*, 43 F.3d at 57*; accord Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir. 2001). Lawsuits challenging the same conduct that "affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims." *Baby Neal,* 43 F.3d at 58. "[E]ven relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories." *Id.; accord Stewart*, 275 F.3d at 227-28.

Here, Plaintiffs assert that the typicality factor is satisfied because the *Kawa* Plaintiffs and

each Settlement Class Member share the same interest of recovering unpaid overtime wages.

Further, the *Kawa* Plaintiffs' interests and their basic legal theory are aligned with those of the

other ASMs included in the Settlement Class.  The typicality factor is therefore satisfied.  *See*

*Craig, supra*, 2013 U.S. Dist. LEXIS 2658, at *27 (typicality met for final approval because

"Again, as noted above, each Class Member's claim flows directly Rite Aid's alleged

misdesignation of ASMs as exempt from overtime requirements, and thus the legal issue central

to the named plaintiff's claims is likewise central to each Class Member's individual claim.").

**Adequacy:**  This requirement is satisfied if both: "(a) the plaintiff's attorney [is]

qualified, experienced, and generally able to conduct the proposed litigation, and (b) the Plaintiff

[does] not have interests antagonistic to those of the class," *Weiss v. York Hospital*, 745 F.2d 786,

811 (3d Cir. 1984) (internal quotations omitted).

Here, adequacy is likely to be satisfied.  First, Plaintiffs' counsel are experienced

employment rights and class action lawyers who have handled numerous federal and state court

actions on behalf of workers.  Lesser Dec. ¶ 19. In addition, Plaintiffs' counsel tried, and

prevailed, in one of the few mid-manager misclassification cases ever to be taken to collective

action verdict, the *Stillman v. Staples* case, which led to this Circuit's largest FLSA/state law

settlement.  *See* Lesser Dec.  ¶ 19 and Exhibit B thereto; Lesser Dec. Exhibit C (Locks Law  Firm

Resume and CVs); Lesser Dec. Exhibit D (Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins,

P.C. CVs).  Second, Plaintiffs do not have any interests that are antagonistic to the Settlement

Class Members.  Lesser Dec. ¶ 20. As already noted in the discussion of the typicality factor,

Plaintiffs interests are aligned with the other ASMs included in the Settlement Class.

**Predominance:**  Rule 23(b)(3) requires that "questions of law or fact common to the

members of the class predominate over any questions affecting only individual members."  Fed.

19

R. Civ. P. 23(b)(3).  The Supreme Court summarized the predominance test as follows:

> The predominance inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues."  When "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members."

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal citations omitted).

Here, Plaintiffs assert that predominance is satisfied for the same reasons, among others, that this Court denied Burlington's decertification motion in *Goodman* – finding that any managerial tasks performed by Burlington's ASMs were minimal.  Final Cert. Opinion at 33.  *See In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, No. 06-3202, 2009 WL 2137224, at *5 (E.D. Pa. July 16, 2009) (finding predominance in overtime lawsuit challenging common classifications of employees as overtime-exempt under white-collar exemptions).

**Superiority:**  Rule 23(b)(3) also requires the Court "to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication," *In re: Prudential Insurance Co. America Sales Practice Litig.*, 148 F.3d 283, 316 (3d Cir. 1998), and "sets out several factors relevant to the superiority inquiry," *id.* at 315-16.  These factors favor class certification for settlement purposes.

First, Rule 23(b)(3)(A) requires courts to consider class members' "interests in individually controlling the prosecution or defense of separate actions."  This requirement is intended to protect against class certification where individual class members have a strong interest in "individually controlling" their own litigation because, for example, the individual claims are emotionally charged or involve significant damages amounts.  *See* William Rubenstein, Alba Conte, and Herbert B. Newberg, *Newberg on Class Actions* at §4:69.  Here, the

20

potential individual damage amounts are less than $50,000 on average and even if such amounts could be obtained, the amount recovered would be much less after paying attorneys' fees and costs. Further, the legal issues are not so emotionally charged that class members have a strong interest in individual control of the litigation.

Second, Rule 23(b)(3)(B) requires courts to consider "the extent and nature of any litigation concerning the controversy already begun by" class members. The *Goodman* Action is the only pending action of which Plaintiffs' counsel is aware that concerns the classification of Burlington ASMs but the claims in *Goodman* are only asserted under the FLSA while the claims of thee members of the Settlement Class are only asserted under State law. Lesser Dec. ¶ 21. Further, the existence of a collective action such as *Goodman*, does not negate the superiority of trying the claims of 1,095 class members that could otherwise be brought in 1,095 separate actions in one proceeding. *See Hall v. Accolade, Inc.,* 2020 U.S. Dist. LEXIS 52632 at *14 (E.D. Pa. Mar. 25, 2020) (finding superiority requirement met in class and FLSA collective settlement); *Craig, supra,* 2013 U.S. Dist. LEXIS 2658, at *30 ("logic dictates that the instant class action structure is superior to individual litigation where there are more than 7,000 potential claimants across the United States and the likelihood of disparate judgments absent class certification is substantial").

Third, Rule 23(b)(3)(C) requires courts to consider the desirability of "concentrating the litigation of the claims in a particular forum." Fed. R. Civ. P. 23(b)(3)(C). Here, Plaintiffs assert that concentration of the claims of Settlement Class Members in this Court is both efficient and desirable because Burlington is headquartered in this District and also due to the extensive familiarity of this Court with the work performed by Burlington ASMs, which would benefit the parties and the Court in bringing the class claims to trial as quickly as possible.

Fourth, Rule 23(b)(3)(D) requires the court to consider any "likely difficulties in

managing the class action." Fed. R. Civ. P. 23(b)(3)(D).  As noted above, this requirement is
irrelevant when a case is certified for settlement purposes.  *See Amchem*, 521 U.S. at 620.

### 3.    The Proposed Notice Satisfies Fed. R. Civ. P. 23(c)(2)(B)

When a class action lawsuit is settled, "[t]he court must direct notice in a reasonable
manner to all class members who would be bound by the proposal,"  which means "the best
notice that is practicable under the circumstances, including individual notice to all class
members who can be identified through reasonable effort." Fed. R. Civ. P. 23(e)(1)(B),
23(c)(2)(B). Also, any notice "must clearly and concisely state in plain, easily understood
language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims,
issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the
member so desires; (v) that the court will exclude from the class any member who requests
exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a
class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).

Here, all of the above requirements are satisfied.  Under the Settlement Agreement, the
parties will provide the third-party administrator retained by the parties, JND Class Action
Administration, LLC (the "Settlement Administrator"), within thirty days after entry of the
Preliminary Approval Order, the information as to the Collective and Settlement Class Members'
contact information and eligible work weeks.  *See* Settlement Agreement at ¶ 8(b).[4]  The Settlement
Administrator shall then attempt to confirm the accuracy and, if necessary, update the addresses
of the Collective and Settlement Class Members through the United States Post Office's National
Change of Address database and within 15 days after receipt of this information, provide the

---

[4] JND Class Action Settlement Administration, LLC, is an experienced and able claims administrator with
whom counsel has worked before and from whom the Parties obtained an all-in capped bid of $35,000 to
handle the settlement administration of this case, which the Parties' counsel agree is a reasonable amount
to administer this case.  *See* Lesser Decl. ¶ 22.

Notice by first class mail and by email, if an email address has been provided, to all Collective and Settlement Class Members. *Id.* at ¶ 8(c)-(d).  Additionally, if the post office returns any Notice without a forwarding address, the Settlement Administrator will work to obtain an updated address by means of a skip trace or other method and will promptly mail the Notice to any updated address it obtains.  *Id.* at ¶ 8(c).  The Settlement Administrator will also create a website and set up the toll-free telephone line, to facilitate communications about the Settlement.  The website will include publicly available documents concerning the Settlement.  *Id.* at ¶ 8(e). Settlement Class Members only will have forty-five days from the original mailing to exclude themselves from the Settlement and Settlement Class Members and Collective Members will have forty-five days from the original mailing to object to the Settlement.  *Id.* at ¶ 8(f).

The Notice is written in clear language and accurately describes the nature of the Actions, the Settlement, the scope of the release, and the process Settlement Class Members must follow to exclude themselves from the Settlement and the process Settlement Class Members and Collective Members must follow to object to the Settlement.  *Id.* at ¶¶ 6, 8(f), 8(i), and Exhibit A thereto. Importantly, each Notice will be individualized to provide each Settlement Class and Collective Member with his/her anticipated gross payment amount and the formula by which this amount was calculated.  *Id.* at ¶ 1 and Exhibit A.  The Notice therefore meets the requirements of Fed. R. Civ. P. 23(c)(2)(B).

### C.   The Court Should Appoint the *Kawa* Plaintiffs as Representatives of the Settlement Class and Undersigned Firms as Settlement Class Counsel

As discussed above, the *Kawa* Plaintiffs meet the typicality and adequacy requirements of Rule 23(a).  They should, therefore, be appointed as representatives of the Settlement Class. In addition, the undersigned law firms of Klafter Olsen & Lesser LLP, the Locks Law Firm LLC and Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins, P.C. are comprised of experienced

employment rights and class action lawyers who have been appointed class counsel in many

class action lawsuits.  *See* Lesser Dec. ¶19 and Exhibits B, C, and D.  This Court should

therefore appoint them as Class Counsel for the purposes of the Settlement.

### D.      The Legal Standards for Preliminary Approval of an FLSA Claim

Court approval of the *Goodman* Collective's FLSA claims is necessary to effectuate a

valid and enforceable release of their FLSA claims.  *McGee v. Ann's Choice, Inc.*, 2014 U.S.

Dist. LEXIS 75840, *4-5 (E.D. Pa. June 4, 2014) (*citing Lynn's Food Stores, Inc. v. United

States*, 679 F.2d 1350, 1353 (11th Cir. 1982)).  Where, as here, the litigation arises from a

private enforcement action under the FLSA's Section 216(b), the standard for ultimate approval

is straightforward:  a court must determine that the settlement is a "fair and reasonable

resolution of a bona fide dispute over FLSA provisions" and if a settlement reflects "a

reasonable compromise" the court may approve the settlement "in order to promote the policy

of encouraging settlement of litigation."  *Lynn's Food Stores, Inc. v. United States.*, 679 F.2d

1350, 1352-54 (11th Cir. 1982) (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697 (1945)).

The Third Circuit has not addressed the review standards for collective action

settlements.  *See Brown v. TrueBlue, Inc.*, 2013 U.S. Dist. LEXIS 137349, *4 (M.D. Pa. Sept.

24, 2014).  However, a number of district courts within the Circuit have reviewed collective

action settlements based on the *Girsh* factors – named after *Girsh v. Jepsen*, 521 F.2d 153, 157

(3d Cir. 1975) – which include: (1) the complexity, expense and likely duration of the litigation;

(2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of

discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages;

(6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to

withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of

the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *See id*. at \*4-5; *Creed v. Benco Dental Supply Co.*, 2013 U.S. Dist. LEXIS 132911, \*5-6 (M.D. Pa. Sept. 17, 2013).

### E.   The Settlement of the Collective Claims Should Be Preliminarily Approved

The Settlement provides the same compensation to the Collective Members as to the Settlement Class Members and for the reasons discussed above, a preliminary determination can be made that it is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions" and "a reasonable compromise."  This conclusion follows from the Rule 23(e) discussion above because the FLSA settlement approval standards are less rigorous than Rule 23(e)'s. *Thompson v. Costco Wholesale Corp.*, No. 14-CV-2778-CAB-WVG, 2017 WL 697895, at \*6 (S.D. Cal. Feb. 22, 2017) ("[A] Court has a considerably less stringent obligation to ensure fairness of the settlement in a FLSA collective action than a Rule 23 action because parties who do not opt in are not bound by the settlement."); *Romero v. La Revise Assocs., LLC*, 58 F. Supp. 3d 411, 421 (S.D.N.Y. 2014) ( "Evaluation of an FLSA settlement is less rigorous than the court's evaluation of a class action settlement because, under the FLSA, parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date.").  The fact that the Settlement meets the exacting requirements of Rule 23(e) for preliminary approval purposes therefore also demonstrates why this Court can and should preliminarily approve the Settlement insofar as it would resolve the FLSA claims of the *Goodman* Collective, especially since it is apparent from the discussion above that most of the *Girsh* factors can be met.[5]  Preliminary approval of the settlement of the claims of the Collective is therefore warranted.

---

[5] Specifically, the discussion above shows that the following *Girsh* factors will likely be met: (1), (3)-(6). Plaintiffs will demonstrate in connection with Final Approval that the settlement of the *Goodman* Action is overwhelmingly supported by the *Girsh* factors.

## IV.     CONCLUSION

For the above reasons, the Court should grant this Motion for an Order Approving

Settlement Notice with regard to the Settlement of the *Goodman* Collective Action and *Kawa*

Class Action and enter the attached proposed Notice Order.

Dated: July 28, 2020                          Respectfully submitted,
Rye Brook, New York


                                              By: */s/ Seth R. Lesser*
                                               Seth R. Lesser
                                              Jeffrey A. Klafter
                                              Christopher Timmel
                                              KLAFTER OLSEN & LESSER LLP
                                              Two International Drive, Suite 350
                                              Rye Brook, New York 10573
                                              Telephone: (914) 934-9200
                                              www.klafterolsen.com

                                              Michael Leh
                                              Neel D. Bhuta
                                              LOCKS LAW FIRM, LLC
                                              801 N. Kings Highway
                                              Cherry Hill, New Jersey 08034
                                              Telephone: (856) 663-8200
                                              www.lockslaw.com

                                              Erik Kahn
                                              Michael A. Galpern
                                              Zachary Green
                                              JAVERBAUM WURGAF HICKS KAHN WIKSTROM &
                                              SININS, P.C.
                                              1000 Haddonfield-Berlin Road, Suite 203
                                              Voorhees, New Jersey 08043
                                              Telephone: (856) 596-4100
                                              www.javerbaumwurgaft.com

                                              *Attorneys for Plaintiffs*