UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---------------------------------------------------------X
STEVEN GOODMAN, Individually and :
on Behalf of All Other Persons Similarly : Civil Action No.: 1:11-cv-04395-JHR-JS
Situated, :
 :
             Plaintiff, :
 :
         -against- :
 :
BURLINGTON COAT FACTORY :
WAREHOUSE CORPORATION, :
BURLINGTON COAT FACTORY :
INVESTMENT HOLDINGS, INC., and :
BURLINGTON COAT FACTORY :
HOLDINGS, INC., :
 :
            Defendants. :
---------------------------------------------------------X
BARBARA KAWA, THERESA MASSEY :
and DANIELLE SOLECKI, Individually :
and on Behalf of All Other Persons : Civil Action No.: 1:14-cv-2787-JHR-JS
Similarly Situated, :
 :
            Plaintiffs, :
 :
         -against- :
 :
BURLINGTON STORES, INC., :
BURLINGTON COAT FACTORY :
WAREHOUSE CORPORATION, :
BURLINGTON COAT FACTORY :
INVESTMENT HOLDINGS, INC., and :
BURLINGTON COAT FACTORY :
HOLDINGS, LLC f/k/a BURLINGTON :
COAT FACTORY HOLDINGS, INC., :
 :
            Defendants. :
---------------------------------------------------------X

**DECLARATION OF SETH R. LESSER
IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF AN ORDER APPROVING SETTLEMENT NOTICE**

1

SETH R. LESSER, an attorney admitted to the bar of this Court, declares, under penalty of perjury that:

1. I am a partner in Klafter Olsen & Lesser LLP, and counsel for Plaintiffs Steven Goodman, Barbara Kawa, Theresa Massey, and Danielle Solecki (collectively, "Plaintiffs"). I am fully familiar with the facts and circumstances set forth herein, and I make this Declaration in support of Plaintiffs' Unopposed Motion for Approval of An Order Approving Settlement Notice ("Plaintiffs' Motion"), as well as for the sending of notice and the scheduling of a final approval hearing, and other relief as set forth in the proposed Preliminary Approval Order attached as Exhibit 2 to the Settlement Agreement, which is attached as Exhibit A hereto, and which sets forth the terms of the proposed settlement reached in the two above-captioned actions ("Actions") between Plaintiffs and Defendants Burlington Stores, Inc., Burlington Coat Factory Warehouse Corporation, Burlington Coat Factory Investment Holdings, Inc., and Burlington Coat Factory Holdings, LLC f/k/a Burlington Coat Factory Holdings, Inc. ("Defendants") (together, Plaintiffs and Defendants are referred to herein as "the Parties").[1]

### I. BACKGROUND

2. Defendants operate a nationwide off-price retail chain in 44 states across the United States. *See* Opinion granting Plaintiffs' Motion for Conditional Certification of a Collective Action *(*Dkt. 114) at 2. As part of its operations, Burlington employs Assistant Store Managers ("ASMs") and classifies them as exempt under the FLSA and state labor laws and does not pay them for overtime hours worked above 40 in a workweek. Plaintiffs allege in the Actions that they and the ASMs who are Collective and Settlement Class Members are misclassified as exempt

---

[1] The Settlement Agreement has three numbered exhibits: Exhibit 1 (proposed order for final approval and judgment); Exhibit 2 (proposed order for approval of settlement notice); and Exhibit 3 (proposed form of notice of settlement).

2

from having to pay overtime in violation of the FLSA and the corresponding State labor laws of California, New York and Illinois.

        **A.**        **Plaintiffs' Legal Claims and Procedural History of the Actions**

        3.        On July 29, 2011, the *Goodman* Action was filed in this Court. Goodman alleged, on behalf of himself and all similarly situated ASMs, that Burlington had misclassified its ASMs as exempt under the FLSA. Following discovery on the limited issue of whether ASMs are similarly situated under the FLSA, on November 20, 2012, this Court granted Goodman's motion for conditional certification of the collective action and directed notice be sent to members of the conditionally certified collective—ASMs (Dkt. 114). After notice went out, approximately 580 additional ASMs joined this lawsuit as Opt-ins to pursue claims for unpaid overtime (a number which has, over time, been reduced to the current 539 Opt-Ins).

        4.        After the deadline to join the *Goodman* Action, the parties engaged in wide-ranging merits discovery regarding whether Burlington misclassified ASMs as exempt and if so, whether such misclassification was willful and lacked a good faith basis. This merits discovery included 28 Opt-in depositions across the country, seven depositions of Burlington corporate witnesses, and multiple sets of written discovery that resulted in over a half million pages of documents produced by Burlington that were reviewed by Plaintiffs' counsel. This comprehensive discovery concluded with fact-specific and lengthy cross-motions from the Parties relating to final certification/decertification of the conditionally certified collective (Dkts. 341 and 348, respectively). In connection with the briefing, Defendants submitted an expert report from Mr. Robert Crandall, to which Plaintiffs responded with an expert report from Dr. Mark Killingsworth.

        5.        The exchange of expert reports led to extensive expert discovery, including expert depositions. On November 18, 2014, after the parties completed expert discovery, Goodman filed a Motion to Preclude the Testimony of Burlington's Expert (Robert Crandall) pursuant to *Daubert*

*v. Merrell Dow Pharmaceuticals*, Inc., 509 U.S. 579 (2000) (Dkt. 338) ("*Daubert* Motion"). In connection with this *Daubert* Motion and the cross-motions on final certification and decertification, the Court held four days of in-court hearings, with live witnesses and oral argument. These hearings took place on December 8-9, 2015 and March 16-17, 2016 (Dkts. 395, 396, 407, 408). On September 20, 2019, the Court entered an Order granting in part and denying in part Goodman's *Daubert* Motion.

6. On November 20, 2019, this Court granted Goodman's motion for final certification of the collective and denied Burlington's motion to decertify (Dkt. 451). This ruling eliminated the last obstacle to a trial of the *Goodman* Action, aside from damages discovery.

7. Prior to these rulings, on May 1, 2014, Plaintiffs Barbara Kawa, Theresa Massey, and Danielle Solecki (the "Kawa Plaintiffs") commenced the *Kawa* Action. By that action, the *Kawa* Plaintiffs alleged, on behalf of themselves and classes of Burlington ASMs who worked in California, New York and Illinois, that Burlington had misclassified these ASMs as exempt under the laws of California, New York and Illinois. On July 9, 2014, Burlington filed a Motion to Dismiss and/or Stay the *Kawa* Action pending the conclusion of the *Goodman* Action (Dkt. 16). On March 30, 2015, the Court issued an order staying the *Kawa* Action, pending the outcome of the *Goodman* Action. On May 8, 2020, the *Kawa* Action was reassigned from Magistrate Judge Williams to Magistrate Judge Schneider.

II. **SETTLEMENT**

A. **The Mediation**

8. After the *Daubert* Motion was decided and after this Court granted Goodman's motion for final certification, and while the parties were waiting for a date on which the Court would hold a collective trial with representative witnesses, the parties began discussing potential resolution of the Actions. They agreed to retain David Geronemus, of JAMS, to serve as a

4

mediator. Mr. Geronemus is considered one of the preeminent mediators in the country and has helped resolve numerous multi-million-dollar class and collective action settlement.

9.  In advance of the mediation, as a result of (1) the extensive discovery; (2) their working with numerous ASMs who had opted-into the *Goodman* Action and who were also putative class members in the *Kawa* Action, and (3) of the comprehensive briefing on the motions for decertification and final certification as well as the briefing and hearings on the *Daubert* motion, Plaintiffs' counsel were thoroughly versed in the strengths and weaknesses of the claims asserted in both *Goodman* and *Kawa*. In addition, with regard to damages, the one topic as to which there had not been discovery, prior to the mediation, Plaintiffs' counsel sent detailed requests for data related to damages of Collective and Settlement Class Members, such as total weeks worked by each group, their hours worked per week, and their salaries. Burlington responded by providing, for each group, their average salary during the relevant time periods, average number of weekly hours worked, and total number of weeks worked during the relevant time periods. Burlington determined the average number of weekly hours worked from time records completed by Collective and Settlement Class Members, which in other cases like this, are typically not completed by the employees at issue. Plaintiffs' counsel asked multiple questions of Burlington concerning the data in order to satisfy themselves that the information provided was accurate. After this careful review, Plaintiffs' counsel were fully informed of Burlington's full potential exposure as to the issues and risks presented in the cases and at trial.

10.  The mediation lasted two entire days: starting on June 2, 2020, with discussions continuing on June 3, 2020. Sometime after 8:00 PM on June 3rd, after extensive efforts by Mr. Geronemus, the parties finally reached an agreement in principle to resolve the *Goodman* and *Kawa* Actions for $19,613,900 and executed a Memorandum of Understanding ("MOU").

**B.    The Settlement.**

11. After reaching the settlement in principle as set forth in the MOU, the Parties then negotiated the full terms of the Settlement now before the Court, as set forth in the Settlement Agreement. The Settlement's principal terms are briefly summarized below.

   a) The "Total Maximum Settlement Amount" is $19,613,900 and includes the (1) Payments to the *Goodman* Collective (2) Payments to the *Kawa* Settlement Class (3) Incentive Payments, (4) Attorneys' Fees and Litigation Expenses Payment, (5) PAGA Payment to the LWDA,[2] and (6) Administrator Payment. The Total Maximum Settlement Amount is all-in with no reversion to Defendants and any amounts due under the Settlement, if approved, shall be paid 10 business days following the date on which a final approval order is no longer subject to any appellate review.

   b) The Parties stipulate, for settlement purposes only, to the certification of a Settlement Class consisting of all ASMs employed by Burlington at its stores in the States of California, New York and Illinois during the following periods:

      i. California: May 1, 2010 through entry of the Notice Order
      ii. New York: May 1, 2008 through entry of the Notice Order
      iii. Illinois: May 1, 2011 through entry of the Notice Order

   c) The Settlement Class Members will be afforded a right to opt-out. Both Collective Members and Settlement Class Members will be afforded a right to object to the Settlement.

   d) The Net Settlement Sum (the portion left from the Total Maximum Settlement Amount after deducting the Named Plaintiff Awards, the Attorneys' Fees and Costs Payment, the PAGA Payment to the LWDA, and the Administrator Payment) shall be allocated to payments to the *Goodman* Collective Members and the *Kawa* Settlement Class Members in proportion to the weeks each represents. The Net Settlement Sum will be distributed to Collective and Settlement Class Members based on their pro rata share of work weeks as ASMs during the relevant time period, exclusive of leaves of absence (if any). Each Collective and Settlement Class Member shall receive a Settlement Payment of no less than $250.

   e) The portion of the PAGA Payment allocated to Collective and Settlement Class Members who worked as ASMs in California during the relevant time period

---

[2] PAGA stands for California's "Private Attorneys General Act", which is a civil penalties provision under California law. Cal. Lab. Code §2698 et seq. The Settlement allocates $15,000 (the "PAGA Payment") to resolve PAGA claims, of which 75% ($11,250) will be allocated to California's Labor and Workforce Development Agency ("LWDA") and 25% ($3,750) will be allocated to the Collective and Settlement Class Members from California pursuant to PAGA.

will be paid pro rata to each eligible Collective and Settlement Class member.

f) 50 percent of the Settlement Payments shall be allocated as wages and 50 percent shall be allocated as liquidated damages, penalties and interest in light of the claims asserted. It is intended that the amount treated as wages shall be subject to regular withholding and deductions for which, at the appropriate time, an IRS Form W-2 shall issue. For that amount treated as liquidated damages, penalties and/or interest, there shall be no withholding or deductions, and, at the appropriate time, an IRS Form 1099 shall issue. Burlington shall be responsible for its portion of the payroll taxes on the amount attributable to wages.

g) In return for the consideration provided under the Settlement, the Settlement Class Members who have not timely and validly opted out, including their heirs, agents, representatives, successors, assigns and estates, shall be deemed to have fully, finally and forever, irrevocably and unconditionally released, remised, and discharged the Released Parties from any and all suits, actions, causes of action, claims, obligations, rights, liabilities, penalties, or demands, whether known or unknown, that were or could have been asserted (whether in tort, contract, or otherwise), for violation of local, state, and federal law arising out of, or relating to claims that Burlington improperly classified the Settlement Class Members as exempt ASMs, including but not limited to the claims alleged in the operative *Kawa* complaint though the date of the approval of the Settlement Notice ("Settlement Class Member Release").

h) In return for the consideration provided under the Settlement, the Collective Members (which includes some Settlement Class Members) including their heirs, agents, representatives, successors, assigns and estates, shall be deemed to have fully, finally and forever, irrevocably and unconditionally released, remised, and discharged the Released Parties from any and all suits, actions, causes of action, claims, obligations, rights, liabilities, penalties, or demands, whether known or unknown, that were or could have been asserted (whether in tort, contract, or otherwise) for violation of local, state, and federal law arising out of, or relating to claims that Burlington improperly classified the Collective Members as exempt ASMs, including but not limited to claims that Burlington failed to provide all overtime wages due through date of the approval of the Settlement Notice ("Collective Member Release").

i) Subject to Court approval, Class Counsel shall be entitled to up to one third of the Total Maximum Settlement Amount as attorneys' fees and their reasonable actual costs ("Attorneys' Fees and Costs Payment").

j) Subject to Court approval, Incentive Payments of up to $10,000 each for a total of $40,000 shall be paid from the Total Maximum Settlement Amount to the Named Plaintiffs in the Actions, Steven Goodman, Barbara Kawa, Theresa Massey and Danielle Solecki.

The complete settlement terms are set forth in the Settlement Agreement, attached as Exhibit A hereto.

### C.  The Settlement is Fair and Reasonable

12.  Plaintiffs believe that the recovery here is not merely adequate—it is a truly excellent result.  Class Counsel understands that the $19,613,900 is the second largest wage and hour settlement in this Court, after the *Staples* settlement cited immediately below.  The gross recovery is $12,003 per Collective and Settlement Class Member.  Although every case is different, in the undersigned counsel's last three settlements in this Circuit of retail chain store mid-manager misclassification claims, the gross recoveries were, respectively, $9,038 per person (*Fischer v. Kmart Corp.*, No. 13-cv-4116 (D.N.J.) (final approval granted Nov. 2, 2016)), $11,838 (*McKee v. PetSmart, Inc.*, 1:12-cv-01117-SLR-SRF (D. Del.) (final approval granted July 27, 2015)), and $2,001 per person (*Hegab v. Family Dollar Stores, Inc.*, No. 11-cv-1206-CCC-JAD (final approval granted March 9, 2015)).  In this Court's largest FLSA/state law collective/class settlement (same counsel as this case), the *Stillman v. Staples* case, also a retail chain store misclassification case, the average gross recovery was $5,952 (Case No. No. 2:08-cv-5746 (KSH)(PS), MDL 2025 (final approval granted November 4, 2011) ($42 million class and collective action settlement); *cf. also, e.g., Nash v. CVS Caremark Corp.*, 1:09-cv-00079 (D.R.I.) (final approval order dated Apr. 9, 2012) (where average gross class member amount $1,760, court termed the result "magnificent."). The excellent $12,003 average gross recovery number here is undoubtedly a fair, reasonable, and adequate result.

13.  Plaintiffs were exceedingly well informed of the facts regarding the claims in *Kawa*.  To all intents and purposes the claims were the exact same as in *Goodman* and Plaintiffs' counsel had the full record of discovery in *Goodman*, both as to ASMs and what they do and as to

8

Burlington's policies and procedures, and had further supplemented that knowledge through the depositions and interviews with the ASMs in *Goodman* who were included in the *Kawa* putative class, and Plaintiff would have substantially been able to argue from the rulings obtained in *Goodman* – particularly the final certification decision – in order to advance the *Kawa* case. Additionally, before the mediation, Plaintiffs obtained information from Defendants necessary to calculate the alleged damages of the Settlement Class Members. Plaintiffs were thus well versed in the strengths and weaknesses of their claims at the time of the mediation. That Plaintiffs vigorously pursued the claims of the Settlement Class is also confirmed by the fact Plaintiffs opposed Defendants' argument that its arbitration agreement applied to certain Settlement Class Members who will share in the Settlement proceeds on the same basis as the Collective Members and those Settlement Class Members who did not sign arbitration agreements – based on the number of weeks they worked.

14. The settlement was achieved through arm's-length negotiations between the parties, over two days, with the assistance of an experienced neutral third-party mediator.

15. Absent settlement, the costs and risks associated with the *Kawa* and *Goodman* Actions would have been significant. As noted above, the Court would be required to resolve the *Kawa* Plaintiffs' anticipated motion for class certification in which the *Kawa* Plaintiffs would have sought certification of a class of all ASMs who worked in New York, California and Illinois from May 1, 2008, May 1, 2010 and May 1, 2011, respectively, through the time of certification. This would have been a highly contested motion, following class discovery in which Burlington would have maintained that certain members of the class were subject to its arbitration agreement and that the nature of its ASM position changed since 2014, when certain Collective Members were deposed in the *Goodman* Action. While the *Kawa* Plaintiffs believe that this Court would likely reject any attempt by Defendants to create material differences in the Settlement Class Members

9

for the same reasons it denied Defendants' motion to decertify the Collective and granted Plaintiff Goodman's Motion for Final Certification of the Collective, and would certify the Settlement Class, such a ruling could likely have been months off (if not longer given the pandemic) and, if the *Kawa* Plaintiffs prevailed on this motion, Defendants could seek a Rule 23(f) appeal to the Third Circuit, further delaying any trial of the class claims, and quite possibly separating them from being able to be tried with the *Goodman* claims (even assuming class certification was ruled upon prior to the *Goodman* trial). This is even besides the litigation risk that misclassification cases present as is well recognized. Even assuming certification of the *Kawa* class, there would have been "attendant risks" of litigation, including a large number of "contingencies" that could have "impact[ed] Plaintiffs' possible recovery" including, for instance, "…the method of calculating damages, proving willfulness in order to extend the statute of limitations by one year in order to obtain an additional year of damages under FLSA, and showing lack of good faith in order to get liquidated damages," which was in addition to the risk presented by alternative methodologies by which damages could be shown. *Roberts v. TJX Corp.*, 2016 U.S. Dist. LEXIS 136987, at *27-28 (D. Mass. Sept. 30, 2016) (approving class settlement in similar retail chain misclassification case). Or, as Judge John Jones III said in approving the *Rite Aid* settlement mentioned above, another hybrid FLSA retail chain store mid-level manager misclassification case settlement, "[i]t is undisputed that copious risks abound with respect to maintaining this action and establishing liability." *Craig v. Rite Aid Corp.*, No. 4:08-cv-2317, 2013 U.S. Dist. LEXIS 2658, at *38 (M.D. Pa. Jan. 7, 2013).

16. Even if the *Goodman* Action were tried first, potential appeals could delay the final outcome of that case for several years and a trial of the *Kawa* Action until such an appeal was resolved. And even if both Actions were tried together, the likely appeal of any jury verdict would delay any recovery to the Settlement Class Members for years. In sum, continued adversarial litigation would be a long, highly contested and expensive process for the Settlement Class, with no

guarantee of any recovery at all.  Given these risks and delays, the Settlement that will provide an average recovery of $12,003 is adequate.

17. The proposed one third attorneys' fees plus expenses will support final approval because the proposed award is justified here given the nine years of extensive litigation that led to the Settlement and is the one third percentage of the benefit obtained is well within the range of percentage of the fund recoveries approved by this Court in similar sized class action settlements. As will be set forth in greater detail as the time of final approval, Plaintiffs' counsel have devoted, to date, in excess of 5,500 hours to these cases, and incurred nearly $348,000 in costs and expenses.  The expected lodestar cross check will be well below a 2x multiplier, which is well within the reasonable range in light of the Circuit's precedent.

18. Plaintiffs' counsel further submit that proposed method of settling Collective Members' awards is equitable, and is the most common method of settling FLSA/analog state law wage and hours claims and has been, as best as I am aware, always accepted by courts.

19. In reaching our conclusion that the settlement here is fair, reasonable and adequate, Plaintiffs' counsel can also draw upon their experience – which it is fair to say is extensive – in similar matters. In one recent instance, the court wrote that, relative to my firm, that we are "highly competent attorneys with substantial experience litigating wage and hour claims, and pursuing such claims in class and collective actions." *Roberts*, 2016 U.S. Dist. LEXIS 136987 at *35. As to myself and my firm, for instance, over the last 10 years, my firm has successfully litigated to conclusion several dozen FLSA/state wage and hour cases and settlements that, to date, constitute over $300 million in recoveries. This includes the cases referred to in paragraph 12, above, and, in addition, included in the cases in which I have acted as the lead counsel are the largest FLSA/state wage and hour settlements in the District of New Jersey (the *Staples* litigation), the District of Rhode Island (*Nash v. CVS*, 09-cv-079 (D.R.I.) ($34 million settlement)), and the

Middle District of Pennsylvania (*Craig v. Rite Aid Corp.*, 08-cv-2317 (M.D. Pa.) ($20.9 million settlement)), as well as the largest settlement in the District of Massachusetts (*Lapan v. Dick's Sporting Goods*, 13-cv-11390 (D. Mass.) ($10 million settlement)). A copy of my CV and firm resume are attached hereto as Exhibit B. My co-counsel are also well-experienced in wage and hour other class action litigation, as is evidenced by Exhibit C hereto (the firm resume for Locks Law Firm, and Messrs. Michael Leh and Neel Bhuta, two attorneys of the firm who particularly worked on the litigation or settlement of this case) and Exhibit D hereto (the CVs of Messrs. Eric Kahn, Michael Galpern, and Zachary Green, three attorneys of the Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins PC who particularly worked on the litigation and settlement of this case).

20.    Plaintiffs do not have any interests that are antagonistic to the Settlement Class Members. Plaintiffs interests are aligned with the other ASMs included in the Settlement Class. Each of the named Plaintiffs in this case substantially aided the litigation on behalf of all Plaintiffs, both *Goodman* collective action members, and putative Kawa class members, by actively aiding Plaintiffs' counsel each step of the way, being willing to put their names on complaints that sued their former employer, and by taking part in discovery, including depositions. The proposed incentive awards for each of $10,000 are also well within accepted precedent within this Court and Circuit, as Plaintiffs shall set forth in connection with final approval.

21.    The *Goodman* Action is the only pending collective action of which Plaintiffs' counsel is aware that concerns the classification of Burlington ASMs but the claims in *Goodman* are only asserted under the FLSA while the claims of thee members of the Settlement Class are only asserted under State law.

22.    Finally, the Settlement notice and administration, if the present motion is approved by the Court, will be administered by an independent and experienced third-party settlement

administrator, and the Parties believe that JND Legal Administration ("JND"), should be appointed as the Settlement Administrator. The Parties have obtained an all-in estimate for administrating the Settlement from JND of no more than $35,000, which I believe to be a reasonable and fair amount for administering a settlement of this size based upon my experience.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and corrected. Executed on this 28th day of July 2020, in Rye Brook, New York.

                                                                     _____
                                                                      Seth R. Lesser