# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

-------------------------------------------------------X
STEVEN GOODMAN, Individually and            :
on Behalf of All Other Persons Similarly         :            Civil Action No.: 1:11-cv-04395-JHR-JS
Situated,                                                          :
                                                                        :
                                        Plaintiff,               :
                                                                        :
                        -against-                               :
                                                                        :
BURLINGTON COAT FACTORY:               :
WAREHOUSE CORPORATION,                    :
BURLINGTON COAT FACTORY:               :
INVESTMENT HOLDINGS, INC., and         :
BURLINGTON COAT FACTORY:               :
HOLDINGS, INC.,                                      :
                                                                        :
                                        Defendants.            :
-------------------------------------------------------X
BARBARA KAWA, THERESA MASSEY         :
and DANIELLE SOLECKI, Individually        :
and on Behalf of All Other Persons              :            Civil Action No.: 1:14-cv-2787-JHR-JS
Similarly Situated,                                        :
                                                                        :
                                        Plaintiffs,              :
                                                                        :
                        -against-                               :
                                                                        :
BURLINGTON STORES, INC.,                      :
BURLINGTON COAT FACTORY:               :
WAREHOUSE CORPORATION,                    :
BURLINGTON COAT FACTORY:               :
INVESTMENT HOLDINGS, INC., and         :
BURLINGTON COAT FACTORY                  :
HOLDINGS, LLC f/k/a BURLINGTON        :
COAT FACTORY HOLDINGS, INC.,            :
                                                                        :
                                        Defendants.            :
-------------------------------------------------------X

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT AND IN SUPPORT
OF AWARD OF ATTORNEYS' FEES AND COSTS, INCENTIVE
PAYMENTS TO NAMED PLAINTIFFS, AND PAYMENT
OF THE SETTLEMENT ADMINISTRATOR**

# <u>TABLE OF CONTENTS</u>

I.      Introduction.................................................................................................................1

II.     Procedural History.......................................................................................................2

III.    Summary of the Settlement Terms, the Notice That Was Sent, and The Class's Reaction........2

IV.     Argument......................................................................................................................4

        A.      The Settlement Class Should be Finally Approved for Settlement Purposes ...............4

                1.      Numerosity.........................................................................................4

                2.      Commonality......................................................................................5

                3.      Typicality...........................................................................................6

                4.      Adequacy............................................................................................7

                5.      Superiority..........................................................................................7

        B.      The Settlement Should be Approved as Fair, Reasonable, and Adequate...................9

                1.      The Rule 23(e)(2) Factors Are Met.....................................................11

                2.      The *Girsh* Factors Are Also Met.......................................................18

                3.      The *Prudential* Factors Are Met.......................................................21

        C.      The Settlement of the Collective Claims Should be Approved....................................22

        D.      The Court Should Award the Requested Attorneys' Fees of the One-Third
                of the Settlement Amount.........................................................................................23

        E.      The Court Should Award Class Counsel's Reasonable Expenses................................28

        F.      The Court Should Award the Requested Incentive Payments to the Named
                Plaintiffs...................................................................................................................29

        G.      The Claims Administrator's Costs Should Be Approved.................................. ...........31

        CONCLUSION..............................................................................................................31

## TABLE OF AUTHORITIES

**Case**                                                                                              **Page**

*Beckman v. KeyBank, N.A.,*
    293 F.R.D. 467 (S.D.N.Y. 2013) ..................................................................... 26

*Brown v. TrueBlue, Inc.,*
    No. 1:10-cv-00514, 2013 U.S. Dist. LEXIS 137349 (M.D. Pa. Sept. 24, 2014) ......................... 22

*Brumley v. Camin Cargo Control, Inc.,*
    2012 U.S. Dist. LEXIS 40599 (D.N.J. March 26, 2012) ................................................ 27

*Careccio v. BMW of N. Am. LLC,*
    No. 08-2619, 2010 U.S. Dist. LEXIS 42063 (D.N.J. Apr. 29, 2010) ................................... 24

*Cook v. Niedert,*
    148 F.3d 1004 (7th Cir. 1998) ...................................................................... 31

*Craig v. Rite Aid Corp.,*
    No. 4:08-cv-2317, 2013 U.S. Dist. LEXIS 2658 (M.D. Pa. Jan. 7, 2013) ........................... *passim*

*Creed v. Benco Dental Supply Co.,*
    No. 3:12-CV-01571, 2013 U.S. Dist. LEXIS 132911 (M.D. Pa. Sep. 17, 2013) .................... 22, 27

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
    509 U.S. 579 (1993) ................................................................................ 12

*Desmond v. PNGI Charles Town Gaming, L.L.C.,*
    630 F.3d 351 (4th Cir. 2011) ....................................................................... 20

*Girsh v. Jepson,*
    521 F.2d 153 (3d Cir. 1975) ........................................................................ 10

*Godshall v. Franklin Mint Co.,*
    No. 01-CV-6539, 2004 U.S. Dist. LEXIS 23976 (E.D. Pa. Dec. 1, 2004) ................................ 30

*Gunter v. Ridgewood Energy Corp.,*
    223 F.3d 190 (3d Cir. 2000) .................................................................... 17, 24

*Hall v. Accolade, Inc.,*
    2020 U.S. Dist. LEXIS 52632 (E.D. Pa. Mar. 25, 2020) ............................................... 9

*In re AT&T Corp. Sec. Litig.,*
    455 F.3d 160 (3d Cir. 2006) ........................................................................ 24

*In re Cendant Corp. Litig.,*
    264 F.3d 201 (3d Cir. 2001) ........................................................................ 23

*In re Computron Software, Inc.,*
    6 F. Supp. 2d 313 (D.N.J. 1998) ...................................................... 25

*In re Datatec Sys. Sec. Litig.,*
    No. 04-CV-525, 2007 U.S. Dist. LEXIS 87428 (D.N.J. Nov. 28, 2007) ...................................... 25

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
    55 F.3d 768 (3d Cir. 1995) ............................................................ 23

*In re Google Inc. Cookie Placement Consumer Privacy Litig.,*
    934 F.3d 316 (3d Cir. 2019) .......................................................... 11

*In re Ikon Office Solutions v. Stuart,*
    194 F.R.D. 166 (E.D. Pa. 2000) ..................................................... 27

*In re Ins. Brokerage Antitrust Litig.,*
    No. 04-5184, 2007 U.S. Dist. LEXIS 74711 (D.N.J. Oct. 5, 2007) ..................................... 27, 30

*In re Janney Montgomery Scott LLC Fin. Consultant Litig.,*
    No. 06-cv-3202, 2009 WL 2137224 (E.D. Pa. July 16, 2009) ............................................. 6

*In re Prudential Ins. Co. of Am. Sales Practices Litig.,*
    962 F. Supp. 450 (D.N.J. 1997) ................................................. *passim*

*In re Rent-Way Sec. Litig.,*
    305 F. Supp. 2d 491 (W.D. Pa. 2003) ........................................... 28

*In re Rite Aid Corp. Sec. Litig.,*
    396 F.3d 294 (3d Cir. 2005) .......................................................... 23

*In re Schering-Plough Corp. Sec. Litig.,*
    No. 01-CV-0829, 2009 U.S. Dist. LEXIS 121173 (D.N.J. Dec. 31, 2009)................................. 24

*In re Vicuron Pharmaceuticals, Inc. Sec. Litig.,*
    512 F. Supp. 2d 279 (E.D. Pa 2007) ............................................ 28

*Johnson v. Big Lots Stores, Inc.,*
    561 F. Supp. 2d 567 (E.D. La. 2008) ........................................... 16

*Lazy Oil Co. v. Witco Corp.,*
    95 F. Supp. 2d 290 (W.D. Pa. 1997) ........................................... 30

*Lincoln Adventures LLC v. Those Certain Underwriters at Lloyd's, London Members,*
    2019 U.S. Dist. LEXIS 171917 (D.N.J. Oct. 3, 2019) .................................................. 27

*Lovett v. Connect Am..com,*
    No. 14-cv-2596, 2015 U.S. Dist. LEXIS 121838 (E.D. Pa. Sep. 11, 2015) ................................ 27

*Lucia v. McClain & Co.,*
No. 11-cv-930, 2015 U.S. Dist. LEXIS 164584 (D.N.J. Dec. 8, 2015) ......................................... 27

*Lynn's Food Stores, Inc. v. United States*
679 F.2d 1350 (11th Cir. 1982) ................................................................ 22

*McCoy v. Health Net, Inc.,*
569 F. Supp. 2d 448 (D.N.J. 2008) ........................................................... 21

*McGee v. Ann's Choice, Inc.,*
2014 U.S. Dist. LEXIS 75840 (E.D. Pa. June 4, 2014) ............................. 22

*Neal v. Casey,*
43 F.3d 48 (3d Cir. 1994) ........................................................................... 6

*Parker v. Jekyll & Hydye Entm't Holdings., L.L.C.,*
08 Civ. 7670, 2010 U.S. Dist. LEXIS 12762 (S.D.N.Y. Feb 9, 2009) ......................................... 26

*Roberts v. TJX Corp.,*
2016 U.S. Dist. LEXIS 136987 (D. Mass. Sept. 30, 2016) ........................ 15

*Romero v. La Revise Assocs., LLC,*
58 F. Supp. 3d 411 (S.D.N.Y. 2014) ....................................................... 22

*Rouse v. Comcast Corp.,*
2015 U.S. Dist. LEXIS 49347 (E.D. Pa. Apr. 14, 2015) ........................... 27

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.,*
659 F.3d 234 (2d Cir. 2011) ..................................................................... 30

*Somogyi v. Freedom Mortg. Corp.,*
Civil No. 17-6546, 2020 U.S. Dist. LEXIS 194035 (D.N.J. Oct. 20, 2020) ......................... *passim*

*Stewart v. Abraham,*
275 F.3d 220 (3d Cir. 2001) ....................................................................... 6

*Stillman v. Staples, Inc.,*
No. 07-849, 2009 U.S. Dist. LEXIS 42247 (D.N.J. May 15, 2009) ....................................... *passim*

*Thompson v. Costco Wholesale Corp.,*
2017 U.S. Dist. LEXIS 24964, 2017 WL 697895.................................... 22

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
   396 F.3d 96 (2d Cir. 2005) .................................................................................. 19, 23

*Weiss v. Mercedes- Benz of N. Am., Inc.,*
   899 F. Supp. 1297 (D.N.J.) ................................................................................... 15

*Weiss v. York Hospital,*
   745 F.2d 786 (3d Cir. 1984) ................................................................................... 7

**Statutes, Rules and Regulations**

29 U.S.C. § 201, *et seq.* (the Fair Labor Standards Act of 1938).....................................*passim*

FED. R. CIV. P. 23..................................................................................................*passim*

**Other Authorities**

William Rubenstein, Alba Conte, and Herbert B. Newberg, *Newberg on Class Actions*................8, 28

American Law Institute, *Principles of the Law of Aggregate Litigation*.................................23

Plaintiffs Steven Goodman, Barbara Kawa, Theresa Massey, Danielle Solecki (collectively "Plaintiffs") submit this memorandum in support of their unopposed motion, pursuant to Federal Rules of Civil Procedure 23(e), 23(h), and 54(d)(2), for the following relief: (1) final approval of the Settlement, including the final certification of the state law Settlement Class and approval of the Settlement as adequate, fair and reasonable as to the Fair Labor Standards Act ("FLSA") collective and the state law Settlement Class; (2) approval to pay the Settlement Administrator, JND Class Action Administration, LLC ("JND"), in an amount up to but not more than $35,000; (3) an award of attorneys' fees and costs, in the amounts of $6,537,966.67 (fees) and $348,000 (costs and expenses); and (4) incentive payments to each Named Plaintiff in the amount of $10,000.[1] A proposed form of final approval order and judgment was previously agreed-upon and part of the parties' Settlement Agreement and a copy is attached hereto as Exhibit A.

## I.    Introduction

Plaintiffs are pleased to move for final approval of the $19,613,000 Settlement that will resolve this nine-year old litigation and these two lawsuits. On August 24, 2020, this Court granted Plaintiffs' motion approving settlement notice and preliminarily approving class action and collective settlement, directing that notice be provided to members of the *Goodman* Collective and the *Kawa* Settlement Class, and setting the date for the fairness hearing. ECF No. 354 ("Preliminary Approval Order"). The 565 Collective and 1,083 Settlement Class Members have

---

[1] Unless otherwise noted, all references to the "Lesser Prelim. Decl." are to the Declaration of Seth R. Lesser in support of Plaintiffs' motion for preliminarily approval (ECF No. 462-2), while references to the "Donaldson Decl." are to the Declaration of Stephen L. Donaldson, attached as Lesser Decl. Exhibit B. References to ECF docket numbers will be to the docket numbers in the *Goodman* matter, unless otherwise noted. Additionally, this memorandum uses the same defined terms as are used in the Settlement Agreement (ECF No. 462-3) and that were used in the Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Approval for an Order Approving Settlement Notice (ECF No. 462-1).

1

been appropriately notified and no member of either group has opted out.  And, further, no member of either group has objected.  Lesser Decl. ¶¶ 4-5, 7; Donaldson Decl. ¶ 10.

There cannot be any fair dispute that the Settlement is not the result of a contested litigation and a particularly hard-fought mediation between skilled and competent counsel. The litigation spanned nine years and included extensive motion practice and discovery. The parties repeatedly required the intervention of the Court to resolve disputes.  The quality of counsel on both sides is, we believe it fair to say, unquestionable. In sum, the Settlement provides the Collective and Settlement Class Members with relief warranting approval.

## II.    Procedural History

The Court is well familiar with this litigation's history and the history was also previously summarized for the Court at pages 1-5 of the Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Approval of An Order Approving Settlement Notice (ECF No. 462-1), which is incorporated by reference to avoid repetition.

## III.    Summary of the Settlement Terms, the Notice That Was Sent, and The Class's Reaction

The Settlement Agreement provides that Defendants will pay up to $19,613,000 into a qualified settlement fund to resolve all claims in these two cases.  *See* Settlement Agreement (ECF No. 462-3). The qualified settlement fund will be administered by JND. The settlement fund will cover back pay and liquidated/statutory damages for the *Goodman* Collective and the *Kawa* Settlement Class, as well as attorneys' fees and costs, the PAGA Payment to the California Labor and Workforce Development Agency and California Settlement Class Members, the incentive payments to the Named Plaintiffs, and JND's costs.

As preliminarily approved by the Court, the Settlement is a hybrid FLSA collective, consisting of the extant members of the *Goodman* collective, and a Rule 23 Settlement Class consisting of all Assistant Store Managers ("ASM") employed by Burlington at its stores in the

States of California, New York and Illinois during the following periods: (a) California: May 1, 2010 through August 24, 2020 (the Preliminary Approval Order date); (b) New York: May 1, 2008 through August 24, 2020; and (c) Illinois: May 1, 2011 through August 24, 2020.

Pursuant to the Preliminary Approval Order, each Collective and Settlement Class Member was sent an individualized Notice setting forth the settlement payment he or she would receive, assuming final approval. *See* Donaldson Decl. ¶¶ 5-7 (setting forth notice program), and Exhibit A thereto. The Notice, approved by the Court, explained in plain English the material terms of the litigation, what the Settlement offered and what claims would be released, and what were the choices of each Collective and Settlement Class Member vis-à-vis the Settlement. *Id.*[2]

Notices were sent to the 1,648 total Collective and Settlement Class Members.[3] Of note, to date, *there has not been a single opt-out. Id.* ¶¶ 11-12 (the opt-out period ends November 30, 2020). And *not a single objection* has been received. *Id.* ¶¶ 9-10 (deadline is also November 30, 2020). It is fair to say that the Settlement has been overwhelmingly accepted and approved, and certainly not rejected, by the Collective and Settlement Class Members.

---

[2] Under the Settlement Agreement, and in conformity with the vast majority of FLSA settlements, individual settlements will be calculated under an allocation formula that considers the number of weeks each Collective and/or Class Member was employed as an ASM during the relevant time periods, for which each will receive a pro rata share of the net settlement amount, thereby ensuring a fair distribution of the settlement proceeds.

[3] After the Notices were mailed, JND received 197 Notice packages returned as undeliverable by the Post Office without updated addresses. Donaldson Decl. ¶ 7. New addresses and/or remails were found for 143 of those. *Id.*

IV.    Argument

A.    The Settlement Class Should be Finally Approved for Settlement Purposes

To first address the propriety of final certification of the Settlement Class (i.e., the *Kawa* state classes), the class must meet the requirements of Rule 23(a) and Rule 23(b)(1), (2) or (3). To satisfy Rule 23(a): (1) the class must be so numerous that joinder of all members is impractical (numerosity); (2) there must be questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class (typicality); and (4) the named plaintiffs must fairly and adequately protect the interests of the class (adequacy of representation, or simply adequacy). *Somogyi v. Freedom Mortg. Corp.*, Civil No. 17-6546 (RMB/JS), 2020 U.S. Dist. LEXIS 194035, *6 (D.N.J. Oct. 20, 2020) (Schneider, J.) (citing *Drennan v. PNC Bank,* 622 F. 3d 275, 291 (3d Cir. 2010)). Certification here is sought under Rule 23(b)(3), which requires that: (1) common questions of law or fact predominate (predominance), and (2) the class action is the superior method for adjudication (superiority). *Id.* The Court must conduct a "rigorous analysis" of the arguments and evidence presented to decide if class certification is appropriate. *Id.* (quoting *In re Lamictal Direct Purchaser Antitrust Litig.*, 957 F.3d 184, 190-91 (3d Cir. 2020)).  These requirements are all met here for settlement purposes.[1]

1.    **Numerosity.**   Starting with Rule 23(a), "[n]o minimum number of plaintiffs is required to maintain a suit as a class action but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, [numerosity] has been met." *Id.* at *6-7 (quotation omitted). Here, the Settlement Class of 1,095 individuals easily meets this requirement for settlement purposes.

---

[1] While agreeing to class certification for settlement purposes, Defendants dispute the propriety of such certification as a litigated matter and has reserved their rights to challenge any motion for class certification in *Kawa* and/or to challenge the propriety of final certification in *Goodman* in the event that the Settlement is not finalized.

2.      **Commonality.**  Where, as here, the action proceeds under Rule 23(b)(3), the Rule 23(a)(2) commonality requirement is subsumed by Rule 23(b)(3)'s predominance requirement. *Id.* at *7 (citing *Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141, 148 (3d Cir. 2008) (citing *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 626 (3d Cir. 1996))).  Commonality does not require perfect identity of questions of law or fact among all class members.  *Id.* (citing *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 486 (3d Cir. 2015)).  Rather, the named plaintiffs must demonstrate that the class members "'have suffered the same injury and that their claims depend upon a common contention capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'"  *Id.* (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).  The predominance requirement examines whether the defendant's conduct was common to the class members, and whether the class members were harmed by the defendant's conduct. *Id.* at *7-8 (citing *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 298 (3d Cir. 2011)).

Here, commonality and predominance are satisfied for settlement purposes because, *inter alia*, each of the proposed Settlement Class Members worked in the same position at Burlington, under the same job descriptions and corporate policies (including its national governance operational standards), and under a uniform method of compensation under which they allegedly performed non-exempt tasks a majority of their time, worked over 40 hours per week and did not receive overtime compensation for their hours worked over 40 hours per week.  *See* Opinion Granting Final Certification and Denying Decertification in *Goodman* (ECF No. 450) ("Final Cert. Opinion") at 32-33.  These facts are sufficient to satisfy the commonality requirement for settlement purposes, and because the core claims arising out of the uniform method of compensation arise from stores in which the same company-wide policies and procedures were in effect, *see id.*, even if some of Defendants' defenses are individualized, they do not predominate

over common defenses. *Id.* Other case issues involve whether Defendants' alleged violations of the state laws was willful and whether statutory damages are available. *See Somogyi*, 2020 U.S. Dist. LEXIS 194035, at *8. Accordingly, both typicality and predominance are met for settlement purposes. *See also, e.g., Craig v. Rite-Aid Corp.*, 2013 U.S. Dist. LEXIS 2658, at *26-27 (finding commonality for final approval purposes met in similar retail chain ASM case because, "[h]ere, the core issue as identified by both the parties and the courts entertaining these consolidated cases is and has always been whether Rite Aid's designation of ASMs as exempt from overtime compensation was proper under the FLSA, its analogous state law counterparts, or both. The ability of each Class Member to recover is directly related to resolution of this central legal issue. Accordingly, we find that commonality is amply satisfied by the proposed class."); *In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, No. 06-3202, 2009 WL 2137224, at *5 (E.D. Pa. July 16, 2009) (finding predominance in overtime lawsuit challenging common classifications of employees as overtime-exempt under white-collar exemptions).

3. **Typicality:** Rule 23(a)(3)'s typicality requirement "is intended to assess whether the action can be efficiently maintained as a class action and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." *Neal v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994); *accord Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir. 2001). This typicality requirement under Rule 23(a)(3) and the adequacy requirement under (a)(4), as to the named plaintiffs, "merge," because typicality generally involves an "'inquiry whether the named [plaintiff's] individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based.'" *Somogyi*, 2020 U.S. Dist. LEXIS 194035, at *8 (quoting *Hassine v. Jeffes*, 846 F. 2d 169, 177 (3d Cir. 1988) (internal quotations and citations omitted)). Lawsuits challenging the same conduct that "affects both the

6

named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims." *Neal,* 43 F.3d at 58. "[E]ven relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories." *Id.; accord Stewart,* 275 F.3d at 227-28.

Here, Plaintiffs assert that the typicality factor (and adequacy factor) is satisfied because the *Kawa* Plaintiffs and each Settlement Class Member share the same interest of recovering unpaid overtime wages. Further, the *Kawa* Plaintiffs' interests and their basic legal theory are aligned with those of the other ASMs included in the Settlement Class. The typicality factor is therefore satisfied for settlement purposes. *See Craig,* 2013 U.S. Dist. LEXIS 2658, at *27 (typicality met for final approval because "Again, as noted above, each Class Member's claim flows directly Rite Aid's alleged misdesignation of ASMs as exempt from overtime requirements, and thus the legal issue central to the named plaintiff's claims is likewise central to each Class Member's individual claim."); *see also Somogyi,* 2020 U.S. Dist. LEXIS 194035, at *9 ("'Cases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirements irrespective of the varying fact patterns underlying the individual claims.'") (quoting *Stewart,* 275 F.3d at 227 (citation omitted)).

4.      **Adequacy:** This requirement is satisfied if both: "(a) the plaintiff's attorney [is] qualified, experienced, and generally able to conduct the proposed litigation, and (b) the Plaintiff [does] not have interests antagonistic to those of the class," *Weiss v. York Hospital,* 745 F.2d 786, 811 (3d Cir. 1984) (internal quotations omitted). As to the former, Class Counsel are experienced employment rights and class action lawyers who have handled numerous federal and state court actions on behalf of workers. Lesser Decl. ¶ 11. In addition, Class Counsel tried, and prevailed, in one of the few mid-manager misclassification cases ever to be taken to collective action verdict, *Stillman v. Staples,* 07-849 (KSH) (D.N.J.), which led to this Circuit's largest FLSA/state law

settlement. *See* Lesser Decl. ¶ 9 and Ex. B thereto; *see also* Lesser Decl. Ex. C (Locks Law Firm Resume and CVs); Lesser Decl. Ex. D (Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins, P.C. CVs). Second, Plaintiffs do not have any interests that are antagonistic to the Settlement Class Members. Lesser Prelim. Decl. ¶ 20. As already noted in the discussion of the typicality factor, Plaintiffs' interests are aligned with the other ASMs included in the Settlement Class.

5.      **Superiority:**  Rule 23(b)(3) finally requires the Court "to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication," *In re: Prudential Insurance Co. America Sales Practice Litigation*, 148 F.3d 283, 316 (3d Cir. 1998), and it "sets out several factors relevant to the superiority inquiry," *id.* at 315-16. These factors favor certification of the Settlement Class.

First, Rule 23(b)(3)(A) requires courts to consider class members' "interests in individually controlling the prosecution or defense of separate actions." This requirement is intended to protect against class certification where individual class members have a strong interest in "individually controlling" their own litigation because, for example, the individual claims are emotionally charged or involve significant damages amounts. *See* William Rubenstein, Alba Conte, and Herbert B. Newberg, *Newberg on Class Actions* at §4:69. Here, the potential individual damage amounts are well less than $20,000 on average and even if such amounts could be obtained, the amount recovered would be much less after paying attorneys' fees and costs in an individual action. Further, the legal issues are not so emotionally charged that class members have a strong interest in individual control of the litigation.

Second, Rule 23(b)(3)(B) requires courts to consider "the extent and nature of any litigation concerning the controversy already begun by" class members. The *Goodman* and *Kawa* cases are the only pending actions of which Class Counsel is aware that concerns the classification of Burlington ASMs. Further, the existence of a collective action such as *Goodman*, does not negate the

superiority of trying the claims of 1,095 class members that could otherwise be brought in 1,095 separate actions in one proceeding. *See Hall v. Accolade, Inc.,* 2020 U.S. Dist. LEXIS 52632 at *14 (E.D. Pa. Mar. 25, 2020) (finding superiority requirement met in class and FLSA collective settlement); *Craig,* 2013 U.S. Dist. LEXIS 2658, at *30 ("logic dictates that the instant class action structure is superior to individual litigation where there are more than 7,000 potential claimants across the United States and the likelihood of disparate judgments absent class certification is substantial").

Third, Rule 23(b)(3)(C) requires courts to consider the desirability of "concentrating the litigation of the claims in a particular forum." Fed. R. Civ. P. 23(b)(3)(C). Here, Plaintiffs assert that concentration of the claims of Settlement Class Members in this Court is both efficient and desirable because Burlington is headquartered in this District and also due to the extensive familiarity of this Court with the work performed by Burlington ASMs, which would benefit the parties and the Court in bringing the class claims to trial as quickly as possible.

Fourth, Rule 23(b)(3)(D) requires the court to consider any "likely difficulties in managing the class action." This particular requirement is irrelevant when, as here, a case is certified for settlement purposes. *Somoygi,* 2020 U.S. Dist. LEXIS 194035 at *9 (citing *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 620 (1997)).

Finally, a class has to be ascertainable, *id.,* a requirement easily met here for settlement purposes since the class was defined of individuals identified from Defendants' employment records.

## B.    The Settlement Should be Approved as Fair, Reasonable, and Adequate.

Rule 23(e)(2) provides that courts should grant final approval to class action settlements that are "fair, reasonable, and adequate." As amended by the 2018 Rule 23 amendments, there is a four-factor test to be used to "focus the court and the lawyers on the core concerns of procedure

and substance that should guide the decision...."  Fed. R. Civ. P. 23(e)(2) Adv. Comm. Notes to 2018 Amendments.  Specifically, a settlement is "fair, reasonable, and adequate" if:

 (A) the class representatives and class counsel have adequately represented the class;

 (B) the proposal was negotiated at arm's length;

 (C) the relief provided to the class is adequate, taking into account:

  (i)  the costs, risks, and delay of trial and appeal;

  (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

  (iii)  the terms of any proposed award of attorney's fees, including the timing of payment; and

  (iv)  any agreement required to be identified under Rule 23(e)(3); and

 (D) the proposal treats class members equally to each other.

Subparagraphs (A) and (B) address the "procedural fairness" of the settlement, while subparagraphs (C) and (D) address "substantive fairness."  *Id.*

 In addition, the Third Circuit has provided guidance on the factors a Court should consider in deciding whether to approve a class action settlement, which are commonly called the "*Girsh*" factors from *Girsh v. Jepson*, 521 F.2d 153, 175 (3d Cir. 1975).  *See Somoygi*, 2020 U.S. Dist. LEXIS 194035 *12 (citing *id.*).  The *Girsh* factors are:

 (1) the complexity, expense and likely duration of the litigation;

 (2) the reaction of the class to the settlement;

 (3) the stage of the proceedings and the amount of discovery completed;

 (4) the risks of establishing liability;

 (5) the risks of establishing damages;

 (6) the risks of maintaining the class action through trial;

(7) the ability of the defendants to withstand a greater judgment;

(8) the range of reasonableness of the settlement fund in light of the best possible recovery; and

(9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* at *12-13.[5]

For motions seeking approval of "settlement only" classes, as here, the court "favor[s] the parties reaching an amicable agreement" and should not "intrude overly on the parties' hard-fought bargain[,]" but also, "[a]t the same time, ... has an obligation as a fiduciary for absent class members to examine the proposed settlement with care." *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 326 (3d Cir. 2019). A presumption of fairness attaches to settlements where "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *Somoygi,* 2020 U.S. Dist. LEXIS 194035 *14 (quoting *In re NFL Players Concussion Injury Litig.*, 821 F. 3d 410, 436 (3d Cir. 2016)). Nonetheless, "[t]he decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." *Girsh*, 521 F.2d at 156.

## 1.   The Rule 23(e)(2) Factors Are Met.

*First*, as to the provisions of Rule 23(e)(2)(A) and (B) – the procedural fairness factors – which look "to the conduct of the litigation" and "the negotiations leading up to the proposed settlement," Fed. R. Civ. P. 23(e)(2) Adv. Comm. Notes to 2018 Amendments, Plaintiffs respectfully contend that Class Counsel has adequately (and we might wish to indulge in hoping

---

[5] Further, there are also the "*Prudential*" factors in this Circuit, *In re Prudential Ins. Co. Am Sales Practice Litig. Agent Actions*, 148 F.3d 283, 323 (3d Cir. 1998), addressed at page 19, below.

perhaps more than adequately) represented the Settlement Class (and the Collective, as well).  To get to this Settlement, they not only invested nine years of time and expense, all on contingency, but had to litigate the case, as evidenced by the nearly 500 docket items in *Goodman*, from pre-filing to first-stage FLSA discovery and then on to a motion under Section 16 of the Fair Labor Standards Act for notice to potential collective members and conditional certification, then on to contested second-stage representative discovery issues, through the entirety of detailed and comprehensive second-stage discovery which led to 28 opt-in depositions across the country, seven depositions of Defendants' corporate witnesses, and multiple sets of written discovery that resulted in over a half million pages of documents produced by Defendants that were reviewed by Class Counsel.  Throughout, there were disputes that required the Court to intervene. The fact discovery was followed by extensive expert discovery, including expert depositions, after the parties exchanged detailed expert reports on the issue of whether Defendants improperly classified ASMs as exempt under the FLSA.

After all this discovery concluded, the case did not settle; and, so, at the end of the second-stage discovery period, Plaintiffs moved for final certification, while Defendants moved to decertify the collective action.  Plaintiffs also filed a motion to strike Defendants' expert under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  Those motions led to four days of live testimony and argument – and even more argument in numerous supplemental authorities filed by the parties – whereupon, in opinions dated September 20, 2019 and November 20, 2019, the Court granted in part and denied in part Plaintiffs' *Daubert* motion, denied Defendants' motion to decertify, and granted Plaintiffs' motion for final certification.  Even though the *Kawa* case had been stayed, it would now proceed to class certification, with Plaintiffs relying on the final certification order in *Goodman*.  In short, to all intents and purposes, this was an FLSA/state law misclassification litigation that Plaintiffs had to pursue to the doorstep of trial.

To achieve the Settlement, not only were there last-minute matters brought to the Court's attention (involving, for instance, disputes over the production of information for the mediation,[6] and an arbitration clause dispute), but the Settlement itself was only reached under the guidance of one of the country's most respected mediators, David Geronemus of JAMS, after two long days of a Zoom mediation held in June.

Further, the adequacy of representation is also demonstrated by the quality of the result which, as is discussed at pages 18-19, below, is quite high.

As just discussed, and as the Court is aware in having encouraged the parties to mediate, the mediation was conducted in an arms' length manner. *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 543 (D.N.J. 1997) ("[T]he Court credits the judgment of Class Counsel, all of whom are active, respected, and accomplished in this type of litigation.").

*Second*, to address the Rule 23(e)(2)(C) and (D) factors – the substantive fairness factors – first, the relief to be provided to the class is adequate, in the first instance, taking into account "the costs, risks, and delay of trial and appeal." Rule 23(e)(2)(C)(i). This factor recognizes that while the "relief that the settlement is expected to provide to class members is a central concern," such relief must be viewed in relation to "the cost and risk involved in pursuing a litigated outcome," which "cannot be done with arithmetic accuracy, but it can provide a benchmark for comparison

---

[6] Despite all the prior discovery, the one topic as to which there had not been discovery, was damages (i.e., payroll data). Accordingly, prior to the mediation, Class Counsel sent detailed requests for data related to damages of Collective and Settlement Class Members, such as total weeks worked by each group, their hours worked per week, and their salaries. Defendants responded by providing, for each group, their average salary during the relevant time periods, average number of weekly hours worked, and total number of weeks worked during the relevant time periods. Defendants determined the average number of weekly hours worked from time records completed by Collective and Settlement Class Members, which in other cases like this, are typically not completed by the employees at issue. Class Counsel asked multiple questions of Defendants concerning the data in order to satisfy themselves that the information provided was accurate. After this careful review, Class Counsel were fully informed of Defendants' full potential exposure as to the issues and risks presented in the cases and at trial. *See* Lesser Prelim. Decl. ¶ 9.

with the settlement figure." Fed. R. Civ. P. 23(e)(2) Adv. Comm. Notes to 2018 Amendments.
Absent settlement, the costs and risks associated with the *Kawa* and *Goodman* Actions would be
significant. Lesser Decl. ¶¶ 2, 10, 13-14. The Court would be required to resolve the *Kawa*
Plaintiffs' anticipated motion for class certification in which the *Kawa* Plaintiffs would have sought
certification of a class of all ASMs who worked in New York, California and Illinois from May 1,
2008, May 1, 2010 and May 1, 2011, respectively, through the time of certification. *Id.* This
would have been a highly contested motion, following some measure of class discovery in which
Defendants would have maintained that certain members of the class were subject to its arbitration
agreement and that the nature of its ASM position changed since 2014, when certain Collective
Members were deposed in the *Goodman* Action. *Id.* While the *Kawa* Plaintiffs believe that this
Court would likely reject any attempt by Defendants to create material differences in the
Settlement Class Members for the same reasons it denied Defendants' motion to decertify the
Collective and granted Plaintiff Goodman's Motion for Final Certification of the Collective, and
would certify the Settlement Class, such a ruling on these issues would likely be at least six months
from now (if not longer given the pandemic, *see Somogyi*, 2020 U.S. Dist. LEXIS 194035 *16
("[t]he COVID crises has slowed civil litigation to a crawl")). Additionally, if the *Kawa* Plaintiffs
prevailed on this motion, Defendants could seek a Rule 23(f) appeal to the Third Circuit, further
delaying any trial of the claims, and quite possibly separating them from being able to be tried with the
*Goodman* claims (even assuming class certification was ruled upon prior to the *Goodman* trial). *Id.*
This is even besides the litigation risk that misclassification cases present, as is well recognized when, as
many collective or class trials have been lost on misclassification claims as have been won.
*Compare, e.g., Stillman v. Staples, Inc.*, No. 07-849 (KSH), 2009 U.S. Dist. LEXIS 42247 (D.N.J.
May 15, 2009) (collective action plaintiffs' verdict) *with Perkins v. Southern New England
Telephone Co Inc.* No. 3:07-967, ECF No. 578 (D. Conn. Oct. 24, 2011) (collective action

defendant's verdict)); *Henry v. Quicken Loans, Inc.,* Case No. 2:04-cv-40346-SJM-MJH (E.D.

Mich. 17, 2011) (collective action defendant's verdict); *Bell v. Citizens Fin. Group*, 2:10-cv-00320

(W.D. Pa.) (same); *see also Weiss v. Mercedes- Benz of N. Am., Inc.*, 899 F. Supp. 1297, 1301

(D.N.J.), *aff'd*, 66 F.3d 314 (3d Cir. 1995) ("the risks surrounding a trial on the merits are always

considerable").[7]

Thus, even assuming certification of the *Kawa* class, there would have been "attendant risks" of

litigation, including a large number of "contingencies" that could have "impact[ed] Plaintiffs' possible

recovery" including, for instance, "...the method of calculating damages, proving willfulness in order

to extend the statute of limitations by one year in order to obtain an additional year of damages

under FLSA, and showing lack of good faith in order to get liquidated damages." *Roberts v. TJX*

*Corp.*, 2016 U.S. Dist. LEXIS 136987, at *27-28 (D. Mass. Sept. 30, 2016) (approving class

settlement in similar retail chain misclassification case).[8] Or, as Judge John Jones III said in

approving another substantial hybrid FLSA retail chain store mid-level manager misclassification

case settlement, "[i]t is undisputed that copious risks abound with respect to maintaining this action

---

[7] Indeed, Class Counsel here is particularly well aware of the risks and delays associated with proceeding to trial in a wage and hour case. In January 2009, the undersigned counsel acted as trial counsel in *Stillman v. Staples,* one of rare FLSA collective actions cases of any substantial size that have ever been tried to a jury. Lesser Decl. ¶ 12. The trial took six weeks, cost hundreds of thousands of dollars and presented innumerable contested issues of both law and fact. Although a plaintiffs' jury verdict was obtained, the post-trial motion practice that followed was extensive and included, among other things, motions for a JNOV, to have the damages reduced pursuant to the "fluctuating work week" basis of calculating overtime and for post-trial decertification of the collective class.

[8] The method of calculating damages presented a particular risk, one that is discussed at pages 18-19, below.

and establishing liability." *Craig v. Rite Aid Corp.*, No. 4:08-cv-2317, 2013 U.S. Dist. LEXIS 2658, at *38 (M.D. Pa. Jan. 7, 2013).[9]

Further, even if the *Goodman* Action were tried first, potential appeals could delay the final outcome of that case and a trial of the *Kawa* Action for several years until such appeals were resolved.  Lesser Prelim. Decl. ¶ 16. And even if both Actions were tried together, the likely appeal of any verdict would delay any recovery to the Settlement Class Members for years.  *Id.*  In sum, continued adversarial litigation would be a long, highly contested and expensive process for the Settlement Class, with no guarantee of any recovery at all.  *Id.*  Given these risks and delays, the Settlement here that will provide an average recovery of $12,003 is adequate.  *Id.*

As to Rule 23(e)(2)(C)(ii), reviewing the manner of distributing the relief, under this factor, the Court "scrutinize[s] the method of claims processing to ensure that it facilitates filing legitimate claims" and "should be alert to whether the claims process is unduly demanding." Fed. R. Civ. P. 23(e)(2) Adv. Comm. Notes to 2018 Amendments.  This factor is satisfied, first, because this a case in which the Settlement Class is a defined group of individuals ascertainable by Defendants' records, and, second, because the Settlement Class Members did not have to file a claim form to receive a Settlement Payment.  *See* Settlement Agreement at ¶ 8(m).   If the Settlement is approved, they (like the *Goodman* Collective Members), will be directly paid.  Moreover, every Settlement Class Member received an individualized notice form that explained the Settlement and specified his/her anticipated Settlement Payment amount.  *See* Donaldson Decl. ¶ 5 & Ex. A.  And, yet further, JND, an extremely experienced claims administrator tracked down individuals for returned

---

[9] Note should also be made of the possibility of post-trial decertification, which has even occurred in FLSA misclassification cases, most notably in *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567 (E.D. La. 2008) (decertifying retail store manager collective action after trial).

original notices and sent new notices, as well as answering inquiries from Settlement Class

members.  Donaldson Decl. ¶¶ 7-8

As to Rule 23(e)(2)(C)(iii), regarding the terms of any proposed award of attorney's fees,

including the timing of payment, this factor recognizes that "[e]xamination of the attorney-fee

provisions may also be valuable in assessing the fairness of the proposed settlement." Fed. R. Civ.

P. 23(e)(2) Adv. Comm. Notes to 2018 Amendments.  Here, Plaintiffs are seeking 33 1/3% of the

Maximum Settlement Amount ($6,537,966.67) as attorneys' fees, plus an additional amount of

$348,000 for reasonable litigation expenses and costs.  At pages 20-29 below, we address the

fairness and reasonableness of these requested attorneys' fees and expenses under the factors

articulated by the Third Circuit in its leading decision of *Gunter v. Ridgewood Energy Corp.*, 223

F.3d 190 (3d Cir. 2000).  For Rule 23(e)(2)(C)(iii)'s purposes, however, the settlement was

negotiated as a common fund settlement from which the parties, agreed after the time the

settlement amount was reached, as to what percentage Plaintiffs would seek without opposition

from Defendants (Lesser Decl.¶ 15), and the payment of the fees and expenses will only be at the

same time that the Settlement Class is paid, satisfying this factor.

As to Rule 23(e)(2)(C)(iv), regarding any other agreements between the parties, besides the

Settlement Agreement, there are no "side agreements" concerning this settlement.  Lesser Decl. ¶

10.  This factor is thus satisfied.

Finally, as to Rule 23(e)(2)(D), this factor seeks to prevent the "inequitable treatment of

some class members *vis-a-vis* others."  Fed. R. Civ. P. 23(e)(2) Adv. Comm. Notes to 2018

Amendments.  This factor is satisfied because all Settlement Class Members (and Collective

Members) will receive their awards based on the same pro rata formula based upon weeks

17

worked with a minimum Settlement Payment of $250; *i.e.*, they are treated equally.[10]  Not only are the Settlement Class Members treated equally relative to each other but, it is worth noting, this is the most common method of settling FLSA/analog state law wage and hour claims and has been, as best Class Counsel is aware, always accepted by courts.  Lesser Prelim. Decl. ¶ 18.

### 2.      The *Girsh* Factors Are Also Met

Inasmuch as the Rule 23(e)(2) factors are met, so, too, are the *Girsh* factors (listed at page 10, above).  *Girsch* factors 1, 3, and 6 were discussed at pages 11-15, above, but, in short, this litigation proceeded entirely through merits and "similarly situated" collective and expert discovery and, indeed in terms of merits discovery practically to trial, and were the case not settled, there would still have been extensive contested matters, including *Kawa* class certification, pre-trial risks, trial risks, and post-trial risks that, even before COVID would have presented "a long road ahead," and certainly a long road now.  *Somogyi*, 2020 U.S. Dist. LEXIS 194035  *18.  Here, the parties "are better off with the certainty of a prompt settlement and payment rather than the uncertainty of whether they will get any recovery at some future unknown date" and, for the Settlement Class "eliminates the risk of losing and provides substantial, immediate and guaranteed monetary and remedial relief."  *Id.* (quotation omitted).  Also addressed above at pages 13-15 are the risks presented to the Settlement Class by continuing litigation (*Girsh* factors 4 and 5), which are not insubstantial and present the possibility of losing at trial and recovering nothing.

As to the reaction of the Settlement Class (*Girsh* factor 2), the fact is that despite direct mail notices to all the Settlement Class members (as well as emails to most of the *Goodman* collective members), there has not been a single opt-out or a single objection, which certainly speaks of a

---

[10] In light of the nature of California law, the $3,750 PAGA Payment to the California Collective and Settlement Class Members will cause them to receive approximately $7.89 more per person than the other Settlement Members, which Class Counsel believes to be an immaterial amount.

positive reaction that warrants approving the Settlement.  *See Somogyi*, 2020 U.S. Dist. LEXIS 194035  *19 (citing *In re Elec. Carbon Prods. Antitrust Litig.*, 447 F. Supp 2d 389, 406 (D.N.J. 2006) ("The absence of objections to a fee request, or the imposition of minimal objections, is seen as an indicator that the fee request is fair.")); *Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*, C.A. No. 08-CV-3610 (CLW), 2015 U.S. Dist. LEXIS 64987, 2015 WL 2383358, at *5 (D.N.J. May 18, 2015), *aff'd*, 639 F. App.'x 880 (3d Cir. 2016) ("[t]he number of exclusions and objections are thus exceptionally small in relation to the size of the potential and confirmed class. Such a discrepancy weighs in favor of approval of the settlement."); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 119 (2d Cir. 2005) ("The favorable reaction of the overwhelming majority of class members to the settlement is perhaps the most significant factor in our...inquiry.").

Finally, *Girsh* factors 8 and 9 evaluate the reasonableness of the Settlement in light of a potential best possible recovery and in light of all the attendant risks of litigation.  Plaintiffs and their counsel believe that the recovery here is not merely adequate but that it is a truly excellent result.  Lesser Decl. ¶ 9.  Not only does Class Counsel understand that the $19,613,900 is the second largest wage and hour settlement in this Court, after the *Staples* settlement cited immediately below, but the gross recovery is $12,003 per Collective and Settlement Class Member.  *Id.*[11]

---

[11] Although every case is different, in the undersigned counsel's last three settlements in this Circuit of retail chain store mid-manager misclassification claims, the gross recoveries were, respectively, $9,038 per person (*Fischer v. Kmart Corp.*, No. 13-cv-4116 (D.N.J.) (final approval granted Nov. 2, 2016)), $11,838 (*McKee v. PetSmart, Inc.*, 1:12-cv-01117-SLR-SRF (D. Del.) (final approval granted July 27, 2015)), and $2,001 per person (*Hegab v. Family Dollar Stores, Inc.*, No. 11-cv-1206-CCC-JAD (final approval granted March 9, 2015)).  *Id.*  In this Court's largest FLSA/state law collective/class settlement (same counsel as this case), the *Stillman v. Staples* case, also a retail chain store misclassification case, the average gross recovery was $5,952 (Case No. 2:08-cv-5746 (KSH)(PS), MDL 2025 (final approval granted November 4, 2011) ($42 million class and collective action settlement); *cf. also, e.g., Nash v. CVS Caremark Corp.*, 1:09-

Further, this result is also excellent in light of the range of damages that could be obtained. Inasmuch as the law in this Circuit remains unclear as to how damages are calculated in misclassification cases – are they determined at a "half time" damage rate, as has been accepted by all the federal Courts of Appeals that have addressed the issue (as have courts within this Circuit, including this Court in its most recent decision on point),[12] are they determined at a "regular" rate analysis which provides for half time up to expected hours to be worked and then time and a half beyond that, as was utilized by Judge Schwartz in the *Stillman v. Staples, Inc.* case, *supra*, or, are they determined at a full-time and a half rate, as would be a theoretical best claim that is rarely, if ever, utilized by Courts. At either a half-time rate <u>or</u> at a "regular" rate analysis (the most likely to be used approaches), for the mediation, Class Counsel determined that the *maximum* recovery for the case would have been $11.9 million (assuming that Plaintiffs prevailed on the arbitration issue that existed as to the Settlement Class Members, or else it would have been just $6.9 million). At a full time and a half approach, which was unlikely (but possible), the damages would have been $67 million (assuming that Plaintiffs prevailed on the arbitration issue, or else it would have been $23 million). Lesser Prelim. Decl. ¶¶ 9, 13. Thus, even assuming Plaintiffs prevailed on the arbitration issue, a $19.6 million recovery against a range from a likely $11.9 million to a possible, but unlikely, $23 or $67 million, is most certainly a fair and reasonable result, particularly given the risks presented by the case, at trial, post-trial and the time

cv-00079 **(D.R.I.)** (final approval order dated Apr. 9, 2012) (also retail chain store misclassification case; where average gross class member amount $1,760, court termed the result "magnificent."). *Id.* The excellent $12,003 average gross recovery number here is undoubtedly a fair, reasonable, and adequate result. *Id.*

[12] *See Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351 (4th Cir. 2011 (applying half-time rate); *Urnikis-Negro v. Am. Family Prosperity Servs.*, 616 F.3d 665 (7th Cir. 2010) (same); *Clements v. Serco, Inc.*, 530 F.3d 1224 (10th Cir. 2008) (same); *Valerio v. Putnam Assocs., Inc.*, 173 F.3d 35 (1st Cir. 1999) (same); *see also DePalma v. The Scotts Company LLC*, No. 13-7740 **(KM) (JAD)**, 2019 U.S. Dist. LEXIS 97036 (D.N.J. June 10, 2019) (same).

20

attendant upon getting any result.  *See also Craig*, 2013 WL 84928, at *9 (method of damage

calculations was crucial unresolved issue that weighed in favor of wage an hour misclassification

class settlement approval); *McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 462 (D.N.J. 2008)

(that parties "insisted on vastly different methodologies for determining damages" favored

settlement).

Accordingly, all of the *Girsch* factors are met with this Settlement.

### 3.    The *Prudential* Factors Are Met.

The "*Prudential*" factors are also met by this Settlement.  Specifically, they are:

[(1) T]he maturity of the underlying substantive issues...the development of scientific
knowledge, the extent of discovery on the merits, and other factors that bear on the ability
to assess the probable outcome of a trial on the merits of liability and individual damages;
(2) the existence and probable outcome of claims by other classes and subclasses; (3) the
comparison between the results achieved by the settlement for individual class or subclass
members and the results achieved-- or likely to be achieved--for other claimants; (4)
whether class or subclass members are accorded the right to opt out of the settlement; (5)
whether any provisions for attorneys' fees are reasonable; and (6) whether the procedure
for processing individual claims under the settlement is fair and reasonable.

*In re Prudential Ins. Co. Am Sales Practice Litig. Agent Actions*, 148 F.3d at 323.

As already shown, "the ability of the parties to evaluate each other's liability position and

the likelihood of success" has been shown. *Somogyi*, 2020 U.S. Dist. LEXIS 194035  at *23

(summarizing first factor in approving settlement).  There are no other known classes or

subclasses likely to have presented any different, much less materially different claim.  The

comparison with other cases has also been addressed.  All class members were accorded the right

to opt-out of the Settlement (although none did).  Attorneys' fees are discussed at pages 21-27,

below. And finally, the procedure for processing claims is most certainly fair and reasonable since

this is not even a claims-made settlement, but rather a direct pay settlement.

21

### C.      The Settlement of the Collective Claims Should Be Approved

Court approval of the settlement of the *Goodman* Collective's FLSA claims is necessary to effectuate a valid and enforceable release of their FLSA claims.  *McGee v. Ann's Choice, Inc.*, 2014 U.S. Dist. LEXIS 75840, *4-5 (E.D. Pa. June 4, 2014) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)).  Where, as here, the litigation arises from a private enforcement action under the FLSA's Section 216(b), the standard for ultimate approval is straightforward:  a court must determine that the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions" and if a settlement reflects "a reasonable compromise" the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation."  *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-54 (11th Cir. 1982) (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697 (1945)).

While the Third Circuit has not addressed the review standards for collective action settlements, *see Brown v. TrueBlue, Inc.*, No. 1:10-cv-00514, 2013 U.S. Dist. LEXIS 137349, *4 (M.D. Pa. Sept. 24, 2014), it is generally believed either that FLSA settlement approval standards are less rigorous than Rule 23(e)'s,[13] or, in this Circuit, are often viewed through the lens of the Rule 23 *Girsh* factors, *see, e.g., Creed v. Benco Dental Supply Co.*, 3:12-CV-01571, 2013 U.S. Dist. LEXIS 132911, *5-6 (M.D. Pa. Sept. 17, 2013).  Irrespective, since as already discussed, the *Girsh* factors are met in this case, the Settlement as to the Collective is therefore fair and reasonable, just as it is for the similarly situated Settlement Class Members.

---

[13] *See, e.g., Thompson v. Costco Wholesale Corp.*, No. 14-CV-2778-CAB-WVG,  2017 U.S. Dist. LEXIS 24964, 2017 WL 697895, at *6 (S.D. Cal. Feb. 22, 2017) ("[A] Court has a considerably less stringent obligation to ensure fairness of the settlement in a FLSA collective action than a Rule 23 action because parties who do not opt in are not bound by the settlement."); *Romero v. La Revise Assocs., LLC*, 58 F. Supp. 3d 411, 421 (S.D.N.Y. 2014) (  "Evaluation of an FLSA settlement is less rigorous than the court's evaluation of a class action settlement because, under the FLSA, parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date.").

### D. The Court Should Award the Requested Attorneys' Fees of One-Third of the Settlement Amount

Pursuant to Rules 23(h) and 54(d)(2), Class Counsel seeks an award of attorneys' fees in the amount of $6,537,966.67, which is one-third of the Maximum Settlement Amount.

This Court uses the "percentage-of-recovery" method in determining attorneys' fee awards in common fund cases, subject to a "lodestar/multiplier" cross-check. *See, e.g., In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005); *In re Cendant Corp. Litig.*, 264 F.3d 201, 256 (3d Cir. 2001); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995). The percentage-of-recovery method's recognized advantage is that it "directly aligns the interests of the class and its counsel" because it incentivizes attorneys to create the largest common fund out of which payments to the class can be made. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 122 (2d Cir. 2005) (internal citations omitted).[14]

In evaluating a fee request, the Third Circuit has identified several factors that a district court should consider in determining an award of attorneys' fees. These factors include:

---

[14] Indeed, in what is perhaps the most serious consideration of current fee jurisprudence in recent years – the American Law Institute's Principles of Aggregate Litigation – the percentage-of-the-fund was recognized as the proper measure:

> (b) Subject to subsection (c), a percentage-of-the-fund approach should be the method utilized in most common-fund cases, with the percentage being based on both the monetary and nonmonetary value of the judgment or settlement.   The court can consider using the "lodestar" approach as a cross-check, particularly when the value of the judgment or settlement is uncertain.
> (c) Other than its use as a cross-check, or its use in cases seeking solely injunctive or declaratory relief, the lodestar method should be limited to:
>     (1) situations in which the fees will be awarded under a fee-shifting statute that requires the lodestar method, or
>     (2) cases in which the court makes a specific finding that the percentage method would be unfair or inapplicable based on the specific facts of the case.

American Law Institute, *Principles of the Law of Aggregate Litigation* § 3.13(b)-(c) at 248-49 (2010).

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiff's counsel; and (7) the awards in similar cases.

*Rite Aid*, 396 F.3d at 301 (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n. 1 (3d Cir. 2000)).  Each of these factors here favors the requested award of attorneys' fees.

First, the fund created by the Settlement is $19,613,000.  As previously noted, the average gross award made available to the Collective and Settlement Class Members is $12,003.  This is at the high end of the range of FLSA/state law retail chain misclassification settlements, which, as discussed above at page 18 fn.11, have, within this Circuit otherwise included gross average amounts of $9,038 per person (*Fischer v. Kmart Corp.*), $11,838 per person (*McKee v. PetSmart*), $2,001 per person (*Hegab v. Family Dollar Stores, Inc.*), $5,952 per person (*Stillman v. Staples*).  It is fair to say that this factor is satisfied.

Second, the Collective and Settlement Class members received notice of the Settlement terms, including the amount of attorneys' fees that Class Counsel are requesting.  Not a single objection was received and no one opted out of the Settlement.  This heavily favors approving the requested attorneys' fee award.  *See, e.g., In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 170 (3d Cir. 2006) (no abuse of discretion where district court approved settlement given eight objections from one million potential class members); *Rite Aid*, 396 F.3d at 305 ("The District Court did not abuse its discretion in finding the absence of substantial objections by class members to be the fee requests weighed in favor of approving the fee request."); *Careccio v. BMW of N. Am. LLC*, No. 08-2619, 2010 U.S. Dist. LEXIS 42063, at *22 (D.N.J. Apr. 29, 2010) (recognizing that one of the "strong indicators" a fee request was fair and reasonable was that "[n]one of the objector letters mentioned the fee award"); *accord In re Schering-Plough Corp. Sec. Litig.*, No. 01-CV-0829 (KSH/MF), 2009 U.S. Dist. LEXIS 121173, at *14-15 (D.N.J. Dec. 31, 2009) (finding that two

objections out of 320,000 potential class members provided "strong evidence in favor of the reasonableness of the fee award").  Accordingly, the second factor favors the requested award.

Third, the Collective and Settlement Classes were represented by experienced counsel who invested significant time and resources into the prosecution of this litigation.  *See* Lesser Prelim. Decl. ¶ 19; Lesser Decl. ¶¶ 11-13.  Class Counsel have served as class counsel in numerous other class and collective actions and have a nationwide reputation for prosecuting wage and hour misclassification lawsuits, including, as discussed, even trying this Court's and the Third Circuit's leading trial, *Stillman v. Staples.* Accordingly, without belaboring Class Counsel's qualifications and experience at length, the third factor favors the requested award.

Fourth, the duration of this litigation certainly weighs in favor of the award of attorneys' fees.  Class Counsel litigated this case for more than nine years, a process that, if nothing else, certainly required patience (and perhaps some fortitude).  As discussed, the case was extensively litigated in all respects and, to all intents and purposes, was being prepared for trial.  Absent settlement, as the course of the case made clear, more time would have been expended and there could have been, as discussed above, numerous appeals.  "The Settlement saves the parties substantial time and money."  *In re Datatec Sys. Sec. Litig.*, No. 04-CV-525 (GEB), 2007 U.S. Dist. LEXIS 87428, at *20 (D.N.J. Nov. 28, 2007).  Accordingly, the fourth factor favors the requested award.

Fifth, the risk of nonpayment was significant.  Class Counsel undertook this action entirely on a contingent fee basis, assuming a substantial risk that they might not be compensated at all for their efforts.  Lesser Decl. ¶ 16.  "Courts recognize the risk of non-payment as a factor in considering an award of attorneys' fees."  *Datatec*, 2007 U.S. Dist. LEXIS 87428, at *20. Accordingly, the fifth factor favors the requested award.

Sixth, Class Counsel committed substantial time and resources into this fee case.  The undersigned's firm alone devoted over 4,000 hours, and co-counsel spent another 2,700 hours. *See* Lesser Decl. ¶ 16.  As noted, all of that time was devoted to this case on a contingency basis with no guarantee of payment.  *Id.*  The hours reported are reasonable for a case of this complexity, magnitude and length and were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff participating in the case.  *See* Lesser Decl. Exs. A- E.  Class Counsel communicated amongst each other regularly to ensure that there was no unnecessary time incurred, nor duplication of effort.  Lesser Decl. ¶ 16.  In addition, there is still work to be done that will be necessary to effectuate the administration of the Settlement which is recognized as necessary and compensable.[15]  This Court also has first-hand knowledge of the nature, scope, and depth of what this litigation has entailed.  Accordingly, the sixth factor favors the requested award.

Seventh, the requested percentage of the Settlement Fund—33 1/3%—is reasonable and in line with multiple other settlements.  While there is no benchmark for attorneys' fee awards, "[t]he Third Circuit has noted that fee awards generally range from 19% to 45% of the settlement fund when the percentage-of-recovery method is utilized to assess the reasonableness of requested

---

[15] The additional time that will be required to administer the Settlement in the future can be reasonably estimated to be at least another 150 hours. Lesser Decl. ¶ 18.  Collective and Settlement Class Members have already had questions regarding the Settlement, and such inquiries will continue through and beyond final approval as Class Members report lost checks and request new ones, raise questions about tax consequences, and generally call for advice. *Id.* There will also be time spent overseeing the claims finalization process. *Id.*  This all is reasonably considered in addressing the fee application.  *See Beckman v. KeyBank, N.A.,* 293 F.R.D. 467 at 482 (S.D.N.Y. 2013) ("Class Counsel is often called upon to perform work after the final approval hearing, including answering class member questions, answering questions from the claims administrator, and negotiating and sometimes litigating disagreements with defendants about administering the settlement and distributing the fund."); *accord Parker v. Jekyll & Hydye Entm't Holdings., L.L.C.,* 08 Civ. 7670 (BSJ) (JCF), 2010 U.S. Dist. LEXIS 12762, at *7-8 (S.D.N.Y. Feb 9, 2009).

attorneys' fees." *Brumley v. Camin Cargo Control, Inc.*, 2012 U.S. Dist. LEXIS 40599, *36-37 (D.N.J. March 26, 2012) (FLSA wage and hour case); *see also Lincoln Adventures LLC v. Those Certain Underwriters at Lloyd's, London Member*s, No. 08-CV-235 (CCC), 2019 U.S. Dist. LEXIS 171917, *18 (D.N.J. Oct. 3, 2019) ("Courts in the Third Circuit, including this one, have viewed fee percentages of 33% as reasonable."); *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 155 (D.N.J. 2013) (approving 33% fee award in MDL 1663); *accord In re Ikon Office Solutions v. Stuart*, 194 F.R.D. 166, 194 (E.D. Pa. 2000); *In re Computron Software, Inc.*, 6 F. Supp. 2d 313, 322-23 (D.N.J. 1998). This is particularly true in wage and hour cases, like this one.[16] Accordingly, the seventh factor favors the requested award.

And because all of the relevant factors favor the requested attorneys' fees award, the award should be approved.

Besides from evaluating the seven factors just addressed, courts in the Third Circuit also confirm the reasonableness of a fee award by cross-checking it with Class Counsel's lodestar. *Rite Aid*, 396 F.3d at 305-06. The lodestar analysis is performed by "multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys." *Id.* at 305. If the lodestar multiplier, which is equal to the proposed fee award divided by the produce of the total hours and the billing rate, is large, the award calculated under the percentage-of-recovery method may be deemed unreasonable, and the Court may consider

---

[16] Numerous courts within the Third Circuit and this District have awarded fees equal to or exceeding 33 1/3% in wage and hour class and collective actions. *See, e.g., Lucia v. McClain & Co.*, Civil Action No. 11-cv-930 (CCC-MF), 2015 U.S. Dist. LEXIS 164584 (D.N.J. Dec. 8, 2015) (42%); *Lovett v. Connect Am..com*, No. 14-2596, 2015 U.S. Dist. LEXIS 121838, at *14-15 (E.D. Pa. Sep. 11, 2015) (38.26%); *Rouse v. Comcast Corp.*, No. 14-1115, 2015 U.S. Dist. LEXIS 49347, at *29 (E.D. Pa. Apr. 14, 2015) (35%); *Creed v. Benco Dental Supply Co.*, No. 3:12-CV-01571, 2013 U.S. Dist. LEXIS 132911, at *17 (M.D. Pa. Sep. 17, 2013) (33 1/3%).

reducing the award.  *Id.*  The lodestar multiplier, however, "need not fall within any pre-defined range, provided that the [d]istrict [c]ourt's analysis justifies the award."  *Id.* at 307.  The court is not required to scrutinize every billing record but may, instead, rely on summaries submitted by the attorneys.  *Id.* at 306-07.

"Multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied."  *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 341 (3d Cir. 1998) (quoting 3 Herbert Newberg & Alba Conte, *Newberg on Class Actions*, §14.03 at 14-5 (3d ed. 1992)); *In re Vicuron Pharmaceuticals, Inc. Sec. Litig.*, 512 F. Supp. 2d 279, 287 (E.D. Pa 2007).  The request here falls well below the middle of the 1x to 4x range.  Indeed, it is just 1.55, a most modest positive multiplier.  Lesser Decl. ¶ 20.  Moreover, in all likelihood, there will be additional time expended in order to oversee the distribution of the settlement proceeds to the Collective and Settlement Class members and to answer their questions which will drive the multiplier down lower.  *Id.* at ¶¶ 3, 17.  In sum, Class Counsel's fee award is well within the range of reasonableness.

It accordingly follows that under the percentage of recovery method and under the lodestar cross-check, the request for attorneys' fees is reasonable and should be approved.

### E.    The Court Should Award Class Counsel's Reasonable Expenses

"Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action."  *Datatec*, 2007 U.S. Dist. LEXIS 87428, at *27  (quotation omitted); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 519 (W.D. Pa. 2003) ("There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of . . . reasonable litigation expenses from that fund.").

Here, Class Counsel requests reimbursement of expenses in the amount of $348,000 to cover the costs incurred by virtue of the full scope of this litigation – including the costs incurred for such things as filing fees, deposition costs, the opt-in notice process, ESI hosting and production, legal research, travel, Plaintiffs' expert, mediation, meals, transportation, court fees, mailing, postage, and telephone. *See* Lesser Decl. ¶ 21. In actuality, the incurred expenses totaled $347,908.17 (Lesser Prelim. Decl. ¶ 23) but the actual expenses, by the time administration is completed will add additional expenses beyond another $92 and will therefore exceed $348,000. *Id.* The expenses are reasonable given the full scope of this litigation to date, are documented on the books of Class Counsel, and are reasonable in relation to the $19 million settlement achieved and should be awarded. *Id.* ¶ 25. The amount was set forth in the Notice and not one person has objected to this request for expenses. Donaldson Decl. ¶ 10; *see* Donaldson Decl. Ex. A.

The efforts of the settlement administrator, JND, are documented in the Keogh Declaration as well. JND's cost for settlement administration is expected to be $35,000. Donaldson Decl. ¶ 13. This includes the administration of the Settlement and mailing of Settlement checks, addressing any deficiencies, handling tax withholding matters and responding to inquiries from Collective and Settlement Class members. This amount is, in the undersigned's experience, exceedingly reasonable and less than typical notice and administration costs for handling a settlement of this size. Lesser Decl. ¶ 8.

F.     **The Court Should Award the Requested Incentive Payments to the Named Plaintiffs**

The Settlement Agreement provides that the Plaintiffs will seek, and Defendants will not oppose, Incentive Payments for the four Named Plaintiffs in the amount of $10,000.00 each. This amount was specifically reflected in the Notice and no objections to their issuance have been received. *See* Donaldson Decl. ¶ 10 & Ex. A. The Named Plaintiffs provided valuable

information about their experiences working for Burlington, and made themselves available throughout the litigation as needed.  *See* Lesser Decl. ¶¶ 26-27.  As a result of the Named Plaintiffs' willingness to bring these actions, 1,634 ASMs stand to recover their losses.  Incentive payments are particularly appropriate in wage and hour cases.  Each Named Plaintiff here faced the risk of retaliation from within the retail industry—or at least the fear of such risk—by putting their name out there as Named Plaintiffs. As the Second Circuit explained in *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 244 (2d Cir. 2011), "an employee fearful of retaliation or of being 'blackballed' in his or her industry may choose not to assert his or her FLSA rights."[17] This Court has just recently reaffirmed the propriety of incentive/service awards in class actions, including rejecting an out-of-circuit authority suggesting otherwise.  *Somogyi*, 2020 U.S. Dist. LEXIS 194035 at *26-27 (citing cases).

The amount of the Incentive Payments being sought is reasonable inasmuch as the law recognizes that it is appropriate to make modest awards in the range of $10,000 to $20,000 in recognition of the services that named plaintiffs perform in a successful class action.  *See, e.g., Rivet v. Office Depot, Inc.*, No. 12-cv-2992, Final Order & Judgment (D.N.J. Dec. 21, 2017) (FLSA case: $10,000 to each of five named plaintiffs); *In re Ins. Brokerage Antitrust Litig.*, Nos. 04-5184 (GEB), 05-1079 (GEB), 2007 U.S. Dist. LEXIS 74711, at *60-61 (D.N.J. Oct. 5, 2007) ($10,000 incentive award to each plaintiff, resulting in total payment of $250,000); *Lazy Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 347 (W.D. Pa. 1997), *aff'd,* 166 F.3d 581, 588 (3d Cir. 1999) ($5,000 to $20,000 and enhancement awards); *Godshall v. Franklin Mint Co.*, No. 01-CV-6539,

---

[17] So that it is clear, Class Counsel do not intend to suggest—in any way—that Defendants here would engage in any retaliation.  There has been no indication that it has retaliated or will retaliate because of this case.  The point is that it is the *fear* of such retaliation that can cause employees to be unwilling and wary of suing the past or present employer by stepping forward as a named plaintiff in a class or collective action.

2004 U.S. Dist. LEXIS 23976, at *19-20 (E.D. Pa. Dec. 1, 2004) ($20,000 enhancement award to each named plaintiff).

The amounts requested here are reasonable and are not out of proportion to the overall Settlement or the average gross payout per Class member.  The payments are therefore appropriate service awards.  *See Cook v. Niedert*, 148 F.3d 1004, 1015 (7th Cir. 1998).  Class Counsel respectfully requests that the Incentive Payments be approved.

G.      **The Claims Administrator's Costs Should Be Approved.**

Finally, the Court should also approve the payment of up to $35,000 to JND for the costs of handling the Settlement notice and administration. *See* Donaldson Decl. ¶ 13.  In the experience and opinion of Class Counsel, this amount is reasonable and typical of the costs for handling a settlement of this size and JND is a premium and effective claims administrator. Lesser Decl. ¶ 8.

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that this Court grant, in its entirety, Plaintiffs' Unopposed Motion for Final Approval of Class And Collective Action Settlement And in Support of Award of Attorneys' Fees And Costs, Incentive Payments to Named Plaintiffs, And Payment of The Settlement Administrator and enter the accompanying proposed Order on Final Approval of Class and Collective Action Settlement and Judgment and the relief set forth therein.

Dated:  November 20, 2020              Respectfully submitted,
Rye Brook, New York

                                      By: */s/ Seth R. Lesser*_____
                                      Seth R. Lesser
                                      Jeffrey A. Klafter
                                      Christopher Timmel
                                      KLAFTER OLSEN & LESSER LLP

31

Two International Drive, Suite 350
Rye Brook, New York 10573
Telephone: (914) 934-9200
www.klafterolsen.com

Michael Leh
Neel D. Bhuta
**LOCKS LAW FIRM, LLC**
801 N. Kings Highway
Cherry Hill, New Jersey 08034
Telephone: (856) 663-8200
www.lockslaw.com

Erik Kahn
Michael A. Galpern
Zachary Green
**JAVERBAUM WURGAF HICKS KAHN WIKSTROM
& SININS, P.C.**
1000 Haddonfield-Berlin Road, Suite 203
Voorhees, New Jersey 08043
Telephone: (856) 596-4100
www.javerbaumwurgaft.com

*Attorneys for Plaintiffs*